UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARK INESTI,                                       :

            Plaintiff,                    :

        -against-                              :

JAMES HICKS, Acting Clinical Dir; MICHAEL          :
HOGAN, Ph D; STEVEN RABINOWITZ, Dir.
of Kirby and (MPC); MICHAEL KUNZ, of              :
Clinical Services; TOM TUZEL, M.D.; LUCY
BORGES-SMITH, Acting Counsler (MPC);              :
DUNBAR, Capt. at GRVC; PRESSELEY, Capt.
at GRVC & GAREEN HAMILIAN,                         :

           Defendants.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

          11 Civ. 2596 (PAC) (AJP)

    **REPORT AND RECOMMENDATION**

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Paul A. Crotty, United States District Judge:**

          Pro se plaintiff Mark Inesti (a/k/a Hector Ortiz) brings this § 1983 action alleging

violations of his federal constitutional rights by New York City and New York State officials.  Inesti

raises claims against two correction Captains, Sherma Dunbar and Anna Pressley ("City

defendants"), arising out of alleged conditions of his confinement and failure to treat his mental

illness while he was held in the George R. Vierno Center ("GRVC"), a facility operated by the New

York City Department of Correction ("DOC") on Rikers Island.  (Dkt. No. 38: 2d Am. Compl. ¶¶ 5-

6, 16-40, 79-84, 86, 90-92, 94-96, 104-05, 138, 143-44.)[1/]   Inesti also raises claims against

defendants James Hicks, Michael Hogan, Steven Rabinowitz, Michael Kunz, Tom Tuzel, Lucy

---

[1/]     Defendants Dunbar and Pressley were incorrectly named in the Second Amended Complaint
as "Dubar" and "Presseley."  (Compl. at 1.)

Borges-Smith and Gareen Hamilian ("State defendants"), arising from his treatment in the Manhattan Psychiatric Center ("MPC") and the Kirby Forensic Psychiatric Center ("Kirby"), facilities operated by the New York State Office of Mental Health on Wards Island.  (2d Am. Compl. ¶¶ 3-4, 7-11, 41-74, 81, 85-89, 106-37, 139-40, 142-44.)  Presently before the Court are defendants' motions to dismiss.  (Dkt. Nos. 40, 42.)  For the reasons stated below, defendants' motions to dismiss should be <u>GRANTED IN PART AND DENIED IN PART</u>.

<u>**FACTS**</u>

<u>**Inesti's Allegations**</u>

 <u>**The City Defendants**</u>

  Inesti's allegations begin with him being examined, diagnosed with "schizoaffective one disorder" and prescribed medication while detained at Rikers Island on an unspecified date. (Dkt. No. 38: Compl. ¶¶ 12, 37.)[2]  Inesti alleges that because of and despite his mental illness, he was given a misbehavior report, a disciplinary hearing was conducted and he was sentenced to ninety-days in the GRVC's special housing unit ("SHU").  (Compl. ¶¶ 13-19, 30-31.)  Inesti alleges that during that period, he was locked in his cell for twenty-four hours a day, was not allowed to shower, and while Captains Sherma Dunbar and Anna Pressley were on duty, was denied meals by correction staff.  (Compl. ¶¶ 15-16.)  Inesti alleges that he complained about these conditions, but his requests for meals, out-of-cell recreation time and a shower were denied.  (Compl. ¶ 17.)  Inesti alleges that while Captains Dunbar and Pressley were on duty, there was constant flooding of toilets and "banging" where he was held.  (Compl. ¶¶ 21, 34.)  Inesti alleges that he began "hearing voices"

---

[2] All references in this Report and Recommendation to "Compl." are to the Second Amended Complaint, unless otherwise noted.

and would bang on his cell door "to dispel[] demonic activity" while asking for mental health treatment and to be taken out of his cell. (Compl. ¶ 22.) Although Inesti's legs and ankles swelled as a result of his banging on his cell door, he received no medical treatment or medication for the associated pain. (Compl. ¶ 25.) Inesti alleges that Captain Pressley came to his cell and told him, "'I run this shit,'" and "'You['re] never going to eat.'" (Compl. ¶ 23.) Captain Dunbar ordered correction officers to perform strip searches on Inesti daily without justification, but no contraband was found. (Compl. ¶ 24.) Inesti was held in a "strip cell" without sheets, towels, hygiene products, writing materials or other personal property. (Compl. ¶ 26.) Inesti appears to allege that Captains Dunbar and Pressley ordered correction staff to shut off the water supply in the SHU to deter SHU prisoners from causing toilets to flood or punish them for banging on their cell doors. (Compl. ¶ 36.) At the end of Inesti's ninety-day SHU sentence, he was transferred to the MPC and Kirby. (Compl. ¶ 40.)

**The State Defendants**

Insesti was brought to the MPC by a court order. (Dkt. No. 38: Compl. ¶ 41.) At the MPC, Inesti was diagnosed with "schizoaffective one disorder," a diagnosis that he was given previously while held in Kirby; he does not indicate when and under what circumstances he had been brought to Kirby. (Compl. ¶ 43.) While at the MPC, Inesti was prescribed the medications Risperdol and Colozapean. (Compl. ¶ 42.) Inesti was placed in a "Stair Residential" in-patient program for twenty-four months, but he verbally objected to this treatment to Steven Rabinowitz, the director of the MPC and Kirby. (Compl. ¶¶ 3, 45-46.) Inesti requested a transfer to a "transitional unit," but instead he was transferred to a housing area within the MPC for "violent assaultive" patients who received electroshock therapy or injections due to their behavior. (Compl.

¶¶ 47-49.)  Inesti received injections due to his confrontations with MPC staff.  (Compl. ¶ 50.)  After being injected with a sedative, Inesti lost control of his torso and legs, was left in a room without a bed and had to sleep on the floor.  (Compl. ¶¶ 51-52.)  Because Inesti could not control his torso or legs, he urinated on himself.  (Compl. ¶ 53.)  Inesti alleges that MPC and Kirby staff give such injections as a means to discipline disruptive patients.  (Compl. ¶ 54.)  Throughout Inesti's time at the MPC, he made written complaints to Rabinowitz about his treatment by staff.  (Compl. ¶¶ 44, 55.)

Inesti was transferred to a "transitional service unit" within the MPC, but while there, he refused to take his medication and became delusional, believing that the staff were giving him "poison pills."  (Compl. ¶¶ 55-59.)  As a result of Inesti's delusions, he struck a nurse.  (Compl. ¶ 60.)  Lucy Borges-Smith, the MPC's acting counselor, called for an ambulance that took Inesti from the MPC to the Bellevue Hospital Center.  (Compl. ¶¶ 11, 61-62.)  Inesti alleges that Borges-Smith failed to inform the EMTs of Inesti's mental health status and medications or provide them with appropriate medical records.  (Compl. ¶¶ 63-64.)  Inesti was released from Bellevue without any mental health treatment or medications and was allowed to wander the streets of New York City in a delusional state until he returned to the MPC.  (Compl. ¶¶ 66-68.)

When Inesti arrived at the MPC, Borges-Smith had him arrested on assault charges and he was brought to a Rikers Island facility.  (Compl. ¶ 69.)  At that facility, Inesti received mental health treatment and medication, but after a court hearing he was released from DOC custody without further treatment or medication.  (Compl. ¶¶ 71-72.)  Inesti again wandered the streets of New York City until he returned to the MPC.  (Compl. ¶ 73.)  Inesti alleges a "revolving door" cycle between 2006 and 2008 in which he was arrested and brought to a Rikers Island facility where he

was either treated or not treated, then released until he returned to the MPC, where he was either treated or not treated, then arrested and taken back to a Rikers Island facility.  (Compl.¶¶ 75-98.)

On August 8, 2008, while released, Inesti suffered a delusion in which he believed that people were trying to kill him and steal real property that he had inherited.  (Compl. ¶ 100.) Inesti was arrested as a result of acts committed while delusional and was ordered by a court to be examined at Bellevue.  (Compl. ¶¶ 101-02.)  At Bellevue, Inesti struck an officer and was injected with medication.  (Compl. ¶ 103.)  From August 8, 2008 to November 21, 2008, Inesti was housed in a GRVC mental health SHU housing area, and Captains Dunbar and Pressley denied him food, clothing, recreation time, showers and mental health treatment.  (Compl. ¶ 104-05.)  Inesti was found not fit to proceed in a criminal trial and, on November 21, 2008, was transferred to Kirby. (Compl. ¶ 106.)

Kirby physician Dr. Tom Tuzel prescribed the medication Risperodol for Inesti. (Compl. ¶¶ 9, 107.)  Dr. Gareen Hamilian, acting clinical director James Hicks, and director of clinical services Michael Kunz all interviewed Inesti and diagnosed him as suffering from "schitzoeffective one disorder." (Compl. ¶¶ 7-8, 10, 108.)  Inesti struck a Kirby staff member while suffering a delusion, believing that the staff member "was part of a team to[] kill him and steal his home." (Compl. ¶ 112.)  Dr. Tuzel ordered Inesti injected with a sedative to stabilize him.  (Compl. ¶ 113.)  Dr. Tuzel also ordered Inesti injected with "psycotropic medication [sic]" on multiple occasions.  (Compl. ¶ 122.)  Inesti states that he never consented to any injections he received at Kirby, and that Kirby staff would restrain him when he was given "psychtropic medication." (Compl. ¶¶ 120, 123-26.)   Inesti further alleges that he was strip searched by unknown Kirby employees.  (Compl. ¶¶ 127-28.)

On January 5, 2009, Kunz and Hamilian "filed a 'Model Report in Support of Competency Restoration' made pursuant to" C.P.L.§ 730.60(2). (Compl. ¶ 109.) Inesti claims that the report indicates that he was diagnosed previously as suffering from "obsessive compulsive disorder, schitzoeffective disorder and has been hospitalized on several occasions for impulsive violent behavior." (Compl. ¶ 110.) Inesti also claims that the report describes him as displaying "erratic and unp[re]dictable out-burst, and [he] has been unable to consist[e]ntly engage with examiners." (Compl. ¶ 111.)

On January 8, 2009, Kunz "filed a Change of Status Ap[p]lication . . . claiming [Inesti] was fit to proceed with criminal charges," and Hicks also found Inesti fit to proceed to trial. (Compl. ¶¶ 115-16.) Inesti claims that Dr. Tuzel gave him "a false diagnosis and [he was] found fit to proceed with trial[,]" and that Rabinowitz "did not want to treat" him. (Compl. ¶¶ 117, 136.) Inesti further claims that due to this "false diagnosis," Dr. Tuzel and Kunz caused him to be sentenced to a twenty year-to-life term of imprisonment "for a crime that was propelled by [his] mental illness . . . ." (Compl. ¶ 140.)

Inesti claims that he "felt threatened and helpless at the hands of" Dr. Tuzel and filed a written complaint about him with Rabinowitz, but that Rabinowitz ordered Inesti transferred back to Rikers Island without further treatment. (Compl. ¶ 121.) Inesti alleges that he was "lab[e]led a nuis[a]nce and troublemaker." (Compl. ¶ 118.) Inesti also alleges that Dr. Tuzel discontinued his medication despite Inesti's "problems dealing with reality." (Compl. ¶ 132.) Inesti alleges that when transferred from one facility to another, his medication was discontinued automatically and it would have to be prescribed again after examination by a physician in the new facility, a process that took

days to weeks.  (Compl. ¶ 133.)  This caused Inesti to suffer the mental illness consequences of being without his medication.  (Compl. ¶ 133.)

**Procedural History**

Inesti filed his original complaint by mail from the Clinton Correctional Facility, although he listed his address as the Downstate Correctional Facility.  (Dkt. No. 2: Orig. Compl. at 1.)  Inesti's original complaint was signed on April 20, 2010 (id. at 14), but the envelope in which it was mailed was postmarked on April 7, 2011.  Inesti does not indicate the date he gave his original complaint to prison officials for delivery to the Court.  The Court received Inesti's original complaint on April 12, 2011.  (Orig. Compl. at 1.)[3/]

Inesti's second amended complaint seeks compensatory and punitive damages, and declaratory and injunctive relief.  (Dkt. No. 38: Compl ¶¶ 136-44.)

The State and City defendants have moved to dismiss Inesti's second amended complaint.  (Dkt. Nos. 40, 42.)

The State defendants' motion to dismiss argues that:  (1) Inesti's claims are barred by the statute of limitations; (2) defendants Hogan and Rabinowitz were not personally involved in any alleged deprivation of Inesti's rights; (3) the second amended complaint does not state facts alleging a violation of any constitutional right or any federal law; (4) Inesti's claims against the State defendants in their official capacities are barred by the Eleventh Amendment; and (5) Inesti lacks

---

[3/]    In addition to the "Received" date stamp from the Court's Pro Se Office indicating that the original complaint was received on April 12, 2011, there is another date stamp on the original complaint indicating that it was received at the "Office of the Appellate Defender" on February 28, 2011.  (Orig. Compl. at 1.)

standing to seek injunctive relief and the claim is moot.  (Dkt No. 43: State Defs. Br.; Dkt. No. 55: State Defs. Reply Br.)

The City defendants' motion to dismiss argues that:  (1) all of Inesti's claims before his alleged August 9, 2008 incarceration are barred by the statue of limitations; (2) Inesti fails to allege the personal involvement of either City defendant in his remaining claims; (3) Inesti's remaining claims as to his medical needs and conditions of confinement do not satisfy even the lenient pro se pleading standards; and (4) Inesti fails to state a claim for municipal liability.  (Dkt. No. 41: City Defs. Br.)   The City defendants' reply adds that:  (1) Inesti admits that no considerations justify tolling the statute of limitations for his claims against the City defendants that accrued before April 2008; and (2) Inesti does not oppose the City defendants' arguments for dismissal of the claims against them in their official capacities.  (Dkt. No. 54: City Defs. Reply Br.)

## ANALYSIS

## I.     THE STANDARDS GOVERNING A MOTION TO DISMISS

### A.     The Twombly-Iqbal "Plausibility" Standard

In two decisions in 2007 and 2009, the Supreme Court significantly clarified the standard for a motion to dismiss, as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Two working principles underlie our decision in Twombly.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 677-79, 129 S. Ct. 1937, 1949-50 (2009) (citations omitted & emphasis added) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955, 1965-66, 1974 (2007) (retiring the Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")).[4/]

---

[4/]    Accord, e.g., Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009); Jones v. N.Y. Dep't of Corr. (DOC) Jail, 11 Civ. 4477, 2011 WL 5865143 at *1-2 (S.D.N.Y. Nov. 22, 2011) (Peck, M.J.), report & rec. adopted, 2012 WL 1232963 (S.D.N.Y. Apr. 12, 2012) (Crotty, D.J.); Lindner
(continued...)

Even after <u>Twombly</u> and <u>Iqbal</u>, the Court's role in deciding a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>Bison Capital Corp.</u> v. <u>ATP Oil & Gas Corp.</u>, 10 Civ. 0714, 2010 WL 2697121 at *5 (S.D.N.Y. June 24, 2010) (Peck, M.J.) (quotations omitted), <u>report & rec. adopted</u>, 2010 WL 3733927 (S.D.N.Y. Sept. 16, 2010); <u>accord</u>, <u>e.g.</u>, <u>Saunders</u> v. <u>Coughlin</u>, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting <u>Geisler</u> v. <u>Petrocelli</u>, 616 F.2d 636, 639 (2d Cir. 1980)).

Even after <u>Twombly</u> and <u>Iqbal</u>, when reviewing a pro se complaint, the Court must use less stringent standards than if the complaint had been drafted by counsel and must construe a pro se complaint liberally. <u>See</u>, <u>e.g.</u>, <u>Harris</u> v. <u>Mills</u>, 572 F.3d at 72; <u>LaBounty</u> v. <u>Adler</u>, 933 F.2d 121, 123 (2d Cir. 1991); <u>Watson</u> v. <u>McGinnis</u>, 964 F. Supp. 127, 131 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.); <u>Saunders</u> v. <u>Coughlin</u>, 1994 WL 88108 at *2 (citing <u>Hughes</u> v. <u>Rowe</u>, 449 U.S. 5, 101 S. Ct. 173 (1980)).  However, "[d]ismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief. . . ." 2 <u>Moore's Federal Practice</u> § 12.34[4][a], at 12-72.7 (2005).  Thus, the "'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'" <u>Id.</u>, § 12.34[1][b], at 12-61; <u>see also</u>, <u>e.g.</u>, <u>Joyner</u> v. <u>Greiner</u>, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (action dismissed because pro se plaintiff "failed to allege facts tending to establish" that defendants violated his constitutional rights).

---

[4]/    (...continued)
v. <u>IBM Corp.</u>, 06 Civ. 4751, 2008 WL 2461934 at *3 (S.D.N.Y. June 18, 2008); <u>Joseph</u> v. <u>Terrence Cardinal Cooke Health Care Ctr.</u>, 07 Civ. 9325, 2008 WL 892508 at *1 (S.D.N.Y. Apr. 2, 2008); <u>Elektra Entm't Grp., Inc.</u> v. <u>Barker</u>, 551 F. Supp. 2d 234, 237 (S.D.N.Y. 2008); <u>Edison Fund</u> v. <u>Cogent Inv. Strategies Fund, Ltd.</u>, 551 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2008); <u>Diana Allen Life Ins. Trust</u> v. <u>BP P.L.C.</u>, 06 Civ. 14209, 2008 WL 878190 at *3 (S.D.N.Y. Mar. 31, 2008) (Crotty, D.J.).

**B.      Consideration Of Documents Attached Or Referred To In The Second Amended Complaint**

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading.  Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." Vassilatos v. Ceram Tech Int'l, Ltd., 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993) (citing Kopec v. Coughlin, 922 F.2d 152, 154-55 (2d Cir. 1991)).[5]  The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  E.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a

---

[5]      Accord, e.g., Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006); Aniero Concrete Co. v. N.Y.C. Constr. Auth., 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  See Fed. R. Civ. P. 12(b); Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000); Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988).

complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . .").[6/]

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document."  Faulkner v. Beer, 463 F.3d at 134 (citations omitted).  In this case, documents to which Inesti referred in his second amended complaint and attached to his opposition papers (Dkt. No. 52) may be considered on the motions to dismiss, subject to the Faulkner v. Beer proviso.

## II.   DEFENDANTS' MOTIONS TO DISMISS ON STATUTE OF LIMITATIONS GROUNDS SHOULD BE DENIED

### A.   The Statute Of Limitations For § 1983 Actions

The statute of limitations for a § 1983 action is three years.  See, e.g., Donaldson v. N.Y.C. Dep't of Educ., 442 F. App'x 601, 602 (2d Cir. 2011) (Plaintiff's "complaint falls well outside the three-year statute of limitations for section 1983 claims brought in New York." (citing Patterson v. Cnty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004))); Harper v. City of N.Y., 424 F. App'x 36, 39 (2d Cir. 2011) (statute of limitations for § 1983 claims is three years, which begins to run when plaintiff knows or has reason to know of the harm); Storman v. Klein, 395 F. App'x 790, 792 (2d

---

[6/]   See also, e.g., Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960, 112 S. Ct. 1561 (1992)); Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir. 1994); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Maniolos v. United States, 741 F. Supp. 2d 555, 560 (S.D.N.Y. 2010) (Peck, M.J.), aff'd, No. 10-4933-CV, 2012 WL 1522003 (2d Cir. May 2, 2012).

Cir. 2010); Warren v. Altieri, 59 F. App'x 426, 427 (2d Cir. 2003) (Plaintiff's "§ 1983 action is governed by New York's three-year statute of limitations as set out in N.Y. C.P.L.R. § 214, the provision applicable to actions for personal injury.").[7]

"[F]ederal law governs the determination of the accrual date (that is, the date the statute of limitations begins to run) for purposes of the statute of limitations in a section 1983 action." Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997); accord, e.g., Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 710-11 (2d Cir. 2002); Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994), cert. denied, 516 U.S. 808, 116 S. Ct. 53 (1995). In general, under federal law, "the time of accrual [is] that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." Covington v. City of N.Y., 171 F.3d 117, 121 (2d Cir.) (quotations omitted), cert. denied, 528 U.S. 946, 120 S. Ct. 363 (1999).[8]

---

[7]     See also, e.g., Corona Realty Holding, LLC v. Town of N. Hempstead, 382 F. App'x 70, 72 (2d Cir. 2010); Mancuso v. Hynes, 379 F. App'x 60, 61 (2d Cir. 2010); Walker v. Jastremski, 430 F.3d 560, 561 (2d Cir. 2005), cert. denied, 547 U.S. 1101, 127 S. Ct. 1887 (2006); Patterson v. Cnty. of Oneida, 375 F.3d at 225; Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002), cert. denied, 538 U.S. 922, 123 S. Ct. 1574 (2003); Paige v. Police Dep't, 264 F.3d 197, 199 n.2 (2d Cir. 2001); Connolly v. McCall, 254 F.3d 36, 40-41 (2d Cir. 2001); Jones v. N.Y. Dep't Corr. (DOC) Jail, 11 Civ. 4477, 2011 WL 5865143 at *2 (S.D.N.Y. Nov. 22, 2011) (Peck, M.J.), report & rec. adopted, 2012 WL 1232963 (S.D.N.Y. Apr. 12, 2012) (Crotty, D.J.); Robinson v. Fischer, 09 Civ. 8882, 2010 WL 5376204 at *5 (S.D.N.Y. Dec. 29, 2010) (Peck, M.J.); Cotto v. Pabon, 07 Civ. 7656, 2008 WL 4962986 at *5 (S.D.N.Y. Nov. 20, 2008) (Peck, M.J.); Denis v. N.Y.S. Dep't of Corr. Servs., 05 Civ. 4495, 2006 WL 217926 at *11 (S.D.N.Y. Jan. 30, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 406313 (S.D.N.Y. Feb. 22, 2006).

[8]     See also, e.g., Assegai v. Bloomfield Bd. of Educ., 165 F. App'x 932, 934 (2d Cir. 2006); Washington v. Cnty. of Rockland, 373 F.3d 310, 317 (2d Cir. 2004); Ormiston v. Nelson, 117 F.3d at 71; Eagleston v. Guido, 41 F.3d at 871; Singleton v. City of N.Y., 632 F.2d 185, 191 (2d Cir. 1980), cert. denied, 450 U.S. 920, 101 S. Ct. 1368 (1981).

Normally, the Court would assume that, under the "prison mailbox rule," Inesti's original compliant was "filed" on April 20, 2010, the date that he signed it while he was incarcerated in Downstate Correctional Facility.  See, e.g., Flemming v. New York, 421 F. App'x 42, 43 (2d Cir. 2011); Tafari v. McGinnis, 328 F. App'x 21, 22 (2d Cir. 2009);  Hardy v. Conway, 162 F. App'x 61, 62 (2d Cir. 2006) ("[I]n the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing." (citing cases)); Walker v. Jastremski, 430 F.3d at 562-63; Rosario v. Bennett, 01 Civ. 7142, 2002 WL 31852827 at *14 (S.D.N.Y. Dec. 20, 2002) (Peck, M.J.) (under the "federal 'prisoner mailbox rule,'" incarcerated pro se litigants are deemed to have filed their federal civil complaints and federal habeas petitions on the date the papers were handed to prison officials for mailing (citing Houston v. Lack, 487 U.S. 266, 276, 108 S. Ct. 2379, 2385 (1988))).[9/]

The original complaint, however, was mailed from the Clinton Correctional Facility in an envelope postmarked April 7, 2011.  Because Inesti does not indicate specifically when he

---

[9/]    See also, e.g., United States v. Montoya, 335 F.3d 73, 75-76 (2d Cir. 2003); Noble v. Kelly, 246 F.3d 93, 97 (2d Cir.), cert. denied, 534 U.S. 886, 122 S. Ct. 197 (2001); Jones v. N.Y. Dep't of Corr. (DOC) Jail, 2011 WL 5865143 at *3; Pitterson v. Lee, 10 Civ. 7289, 2011 WL 3370393 at *4 (S.D.N.Y. July 29, 2011), report & rec. adopted, 2011 WL 4595197 (S.D.N.Y. Sept. 26, 2011); Cordova-Diaz v. Brown, 10 Civ. 5133, 2011 WL 723575 at *1 n.1 (S.D.N.Y. Feb. 8, 2011);  Devison v. Cunningham, 09 Civ. 1031, 2010 WL 5060728 at *1 n.1 (S.D.N.Y. Dec. 8, 2010); Giles v. Smith, 10 Civ. 5322, 2010 WL 4159468 at *2 n.2 (S.D.N.Y. Oct. 8, 2010); Hill v. Melvin, 05 Civ. 6645, 2006 WL 1749520 at *6 (S.D.N.Y. June 27, 2006) (Peck, M.J.), aff'd, 323 F. App'x 61 (2d Cir. 2009); Denis v. N.Y.S. Dep't of Corr. Servs., 2006 WL 217926 at *11; Hill v. Senkowski, 409 F. Supp. 2d 222, 229 (W.D.N.Y. 2006); Bordas v. Greiner, 04 Civ. 8904, 2005 WL 3071461 at *2 (S.D.N.Y. Nov. 14, 2005); Shomo v. City of N.Y., 03 Civ. 10213, 2005 WL 756834 at *3 (S.D.N.Y. Apr. 4, 2005); Dawkins v. Jones, 03 Civ. 0068, 2005 WL 196537 at *8 (S.D.N.Y. Jan. 31, 2005) (Peck, M.J.); Coble v. Stinson, No. 97-CV-0717, 2004 WL 1454392 at *1 n.4 (W.D.N.Y. June 23, 2004); Moreno-Castillo v. United States, 02 Civ. 2858, 2003 WL 23109747 at *1 n.1 (S.D.N.Y. Dec. 31, 2003).

gave his original complaint to prison officials for its delivery to the Court, the Court assumes that Inesti gave his original complaint to prison officials at Clinton Correctional Facility on April 7, 2011. See, e.g., Smolen v. Berbary, No. 08-CV-6144, 2011 WL 5978926 at *3 (W.D.N.Y. Nov. 29, 2011) (Court uses the postmark date on the envelope as the date of filing); Andolina v. Kenny, No. 09-CV-0379, 2010 WL 786302 at *3 (N.D.N.Y. Mar. 3, 2010) (using postmark date for the date of filing of the complaint); Diallo v. N.Y. Hotel & Motel Trades Council, 05 Civ. 0430, 2007 WL 510099 at *2 (S.D.N.Y. Feb. 16, 2007) (using the postmark date as the filing date of a complaint); Moreno-Castillo v. United States, 2003 WL 23109747 at *1 n.1 (adopting the postmark date as the date of filing when there is no indication of when the prisoner gave his complaint to prison officials for its delivery to the court). Absent tolling, the § 1983 claims that accrued before April 7, 2008 would be untimely.

## B.  Statutory Tolling Of The Statute Of Limitations Under C.P.L.R. § 208

"Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983." Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 2007) (quoting Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002), cert. denied, 538 U.S. 922, 123 S. Ct. 1574 (2003)); accord, e.g., Singleton v. City of N.Y., 632 F.2d 185, 191 (2d Cir. 1980), cert. denied, 450 U.S. 920, 101 S. Ct. 1368 (1981). New York law provides a toll for "insanity," as follows:

> If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases, . . . the time within which the action must be commenced shall be extended to three years after the disability ceases . . . .

C.P.L.R. § 208.  This tolling provision has been held not to defeat § 1983's goals.  See Shonowsky v. City of Norwich, No. 10-CV-0745, 2011 WL 4344028 at *3 (N.D.N.Y. Apr. 18, 2011) (C.P.L.R. § 208 held not to be inconsistent with the policy underlying § 1983 in an unlawful arrest, excessive force and deprivation of due process case), report & rec. adopted, 2011 WL 4344039 (N.D.N.Y. Sept. 14, 2011); Keitt v. City of N.Y., 09 Civ. 5663, 2010 WL 3466175 at *7 (S.D.N.Y. Aug. 9, 2010), report & rec. adopted, 2010 WL 3466079 (S.D.N.Y. Sept. 2, 2010).

C.P.L.R. § 208's "toll for insanity [is] to be narrowly interpreted" to apply "to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society." McCarthy v. Volkswagen of Am., Inc., 55 N.Y.2d 543, 548, 450 N.Y.S.2d 457, 459-60 (1982).[10]  "[T]he disability of insanity must [be] continuous during the relevant period." Washington v. Doe, 2011 WL 679919 at *2.[11]  "Plaintiff bears the burden of establishing the applicability of section 208." Shonowsky v. City of Norwich, 2011 WL 4344028 at *3.[12]

---

[10]  Accord, e.g., Steinberg v. Proctor, Nos. 99-9332, 99-9334, 213 F.3d 626 (table), 2000 WL 687710 at *1 (2d Cir. May 25, 2000); Washington v. Doe, No. 08-CV-4399, 2011 WL 679919 at *2 (E.D.N.Y. Feb. 16, 2011); Estate of Mandarino v. Mandarino, 699 F. Supp. 2d 646, 654 (S.D.N.Y. 2010), aff'd, 408 F. App'x 428 (2d Cir. 2011); Swartz v. Berkshire Life Ins. Co., 99 Civ. 9462, 2000 WL 1448627 at *4 (S.D.N.Y. Sept. 28, 2000).

[11]  Accord, e.g., Carter v. Doe, 05 Civ. 8432, 2006 WL 2109461 at *3 (S.D.N.Y. July 26, 2006); de los Santos v. Fingerson, 97 Civ. 3972, 1998 WL 740851 at *3 (S.D.N.Y. Oct. 23, 1998).

[12]  Accord, e.g., Washington v. Doe, 2011 WL 679919 at *2; Marshall v. Downey, No. 09-CV-1764, 2010 WL 5464270 at *6 (E.D.N.Y. Dec. 27, 2010); Reyes v. City of N.Y., 00 Civ. 1050, 2000 WL 1505983 at *7 (S.D.N.Y. Oct. 6, 2000); de los Santos v. Fingerson, 1998 WL 740851 at *3; Dumas v. Agency for Child Dev.-N.Y.C. Head Start, 569 F. Supp. 831, 833-34 (S.D.N.Y. 1983); Graboi v. Kibel, 432 F. Supp. 572, 580 (S.D.N.Y. 1977); Doe v. Holy See (State of Vatican City), 17 A.D.3d 793, 794, 793 N.Y.S.2d 565, 567 (3d Dep't 2005), appeal denied, 6 N.Y.3d 707, 812 N.Y.S.2d 443 (2006).

Because § 208 provides no definition for the term "insanity," "an individual's mental capacities is largely a factual question." McCarthy v. Volkswagen of Am., Inc., 55 N.Y.2d at 548, 450 N.Y.S.2d at 459.[13/]   Under New York law, psychiatric hospitalization is not a per se basis for a toll under § 208.   See, e.g., McAdoo v. Jagiello, No. 10-CV-0355, 2011 WL 1577236 at *4 (N.D.N.Y. Apr. 26, 2011).[14/]   The "insanity [disability] need not have been adjudicated at the time the cause of action accrued." McCarthy v. Volkswagen of Am., Inc., 55 N.Y.2d at 547, 450 N.Y.S.2d at 459.  But it must be more than mere mental illness. E.g., Reyes v. City of N.Y., 2000 WL 1505983 at *6 ("Indeed, 'apathy, depression, post-traumatic neurosis, psychological trauma and repression therefrom or metal illness alone have been held to be insufficient' without a demonstrated inability to function."); Swartz v. Berkshire Life Ins. Co., 2000 WL 1448627 at *5 ("Difficulty in functioning is not sufficient to establish insanity for the purpose of § 208; rather, the plaintiff must be totally unable to function as a result of a 'severe and incapacitating' disability.").[15/]

---

[13/]   Accord, e.g., Matthews v. Town of Jewett, No. 09-CV-1267, 2011 WL 2973618 at *2 (N.D.N.Y. July 21, 2011); Shonowsky v. City of Norwich, No. 10-CV-0745, 2010 WL 4609305 at *1 (N.D.N.Y. Nov. 4, 2010); dePoel v. City of N.Y., 772 F. Supp. 106, 108 (E.D.N.Y. 1991).

[14/]   See also, e.g., Washington v. Doe, 2011 WL 679919 at *3; Shonowsky v. City of Norwich, 2010 WL 4609305 at *1; Joseph S. v. Hogan, 561 F. Supp. 2d 280, 315 (E.D.N.Y. 2008); dePoel v. City of N.Y., 772 F. Supp. at 108 ("Mere mental illness is insufficient.").

[15/]   See also, e.g., de los Santos v. Fingerson, 1998 WL 740851 at *4; dePoel v. City of N.Y., 772 F. Supp. at 108; Dumas v. Agency for Child Dev.-N.Y.C. Head Start, 569 F. Supp. at 833; Burgos v. City of N.Y., 294 A.D.2d 177, 178, 742 N.Y.S.2d 39, 40 (1st Dep't 2002) ("vague and conslusory" description of plaintiff's "'dementia and psychotic disorder'" is insufficient for toll); Davis v. Reed, 191 A.D.2d 348, 348, 596 N.Y.S.2d 4, 5 (1st Dep't) ("The conclusory assertion of repressed memory due to 'posttraumatic neurosis' is insufficient to invoke the tolling provisions of CPLR 208."), appeal denied, 82 N.Y.2d 749, 602 N.Y.S.2d 807 (1993).

### C.   Application Of C.P.L.R. § 208 to Inesti

Inesti appears to argue that the limitations period should be tolled because he has been "dealing with a[n] . . . ongoing mental illness that caused" his action's untimeliness.  (Dkt. No. 52: Inesti Opp. Br. ¶¶ 2, 31.)  Inesti's second amended complaint alleges that during or before January 2008, he "hear[d] voices" while detained on Rikers Island and would bang on his cell door "to dispel[] demonic activity" while asking for mental health treatment.  (See pages 2-3 above.)  Inesti alleges that he was hospitalized eventually in the MPC pursuant to a court order.  (See page 3 above.)  In both the MPC and in Kirby, Inesti was diagnosed with "schizoaffective one disorder."  (See page 3 above.)  When Inesti was transferred eventually to an MPC "transitional service unit," he refused to take his medication, became delusional, believed that the staff were giving him "poison pills" and struck a nurse.  (See page 4 above.)  Inesti was taken to Bellevue, but was released to the streets until he returned to the MPC.  (See page 4 above.).  At the MPC, Inesti was arrested, brought to Bellevue, did not receive mental health treatment and was released to wander the streets.  (See page 4 above.)  Inesti wandered the streets until he returned to the MPC.  (See page 4 above.)  Inesti alleges a continuous cycle between 2006 and 2008, in which  he was arrested, brought to a Rikers Island facility, where he was either treated or not treated, then released until he returned to the MPC, where he was either treated or not treated and then arrested and taken back to a Rikers Island facility.  (See pages 4-5 above.)

In addition, in support of his claim of "insanity" tolling, Inesti attaches to his opposition brief a "CPL Article 730 Examination" report ("Weissman Report") about him dated October 13, 2008 by psychologist Erica Weissman, and a "Model Report in Support of Competency Restoration made pursuant to CPL § 730.60(2)" ("Kunz Report") about him, dated January 5, 2009,

by Kunz.  (Inesti Opp. Br. Ex. A.)  In October 2008, and in the context of recommending whether Inesti was fit to proceed in a criminal trial pursuant to C.P.L. § 730, Weissman diagnosed Inesti as having a "Mood Disorder Not Otherwise Specified (NOS)" and a "Personality Disorder NOS with Borderline and Antisocial Features."  (Weissman Report at 4.)  Weissman opined that while Inesti "may be exaggerating some of his symptoms in the hope of receiving more lenient treatment by the criminal justice system[,] . . . he is, in fact, currently incapacitated . . . [and] would benefit from further inpatient care, including . . . psychotropic medications and cognitive-behavioral psychotherapy."  (Weismann Report at 4.)  By order dated November 21, 2008, Inesti was found unfit to proceed to trial and was transferred from City custody to Kirby.  (Dkt. No. 44: Buskin Aff. Ex. A; see Dkt. No. 38: Compl. ¶ 106.)  In January 2009, Kunz found that Inesti was not impaired or was impaired minimally with regard to his orientation "as to person, place and time," perception, memory, "thinking/communicating," mood, understanding of the criminal trial process, ability to establish a working relationship with his attorney, "intelligence/judgment," and his ability to withstand the stresses of trial.  (Kunz Report at 4-7.)  Kunz further opined that Inesti was "[m]alingering," or "faking signs and symptoms of mental illness for secondary gain." (Kunz Report at  8).  By order dated January 15, 2009, Inesti was found fit to proceed to trial.  (Buskin Aff. Ex. B; Compl. ¶ 116.)

There is a factual question for purposes of C.P.L.R. § 208 tolling as to whether Inesti was suffering from "insanity" during the running of the limitations periods of his claims that arose from events prior to April 7, 2008.  Accordingly, the City and State defendants' motions to dismiss certain claims as untimely should be DENIED.

### III.   CLAIMS AGAINST THE STATE DEFENDANTS

**A.   Defendants' Motions To Dismiss Claims Against Hogan, Rabinowitz, Dunbar And Pressley For Lack Of Personal Involvement Should Be Denied As To Personal Capacity But Granted As To Their Official Capacity**[16/]

**1.   Personal Involvement**

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); accord, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Warheit v. City of N.Y., 271 F. App'x 123, 126 (2d Cir. 2008); Dyno v. Vill. of Johnson City, 240 F. App'x 432, 434 (2d Cir. 2007), cert. denied, 552 U.S. 1310, 128 S. Ct. 1874 (2008); Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006); Gill v. Tuttle, 93 F. App'x 301, 302 (2d Cir. 2004); Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107,

---

[16/]   The Eleventh Amendment bars suit in federal court against the State defendants in their official capacities for damages. E.g., Brown v. DeFrank, 06 Civ. 2235, 2006 WL 3313821 at *16 (S.D.N.Y. Nov. 15, 2006) (Peck, M.J.) (& cases cited therein); Freeman v. Strack, 99 Civ. 9878, 2000 WL 1459782 at *1 (S.D.N.Y. Sept. 29, 2000) (Peck, M.J.) ("'It is black letter law that a suit against a state official in his official capacity seeking damages is barred by the Eleventh Amendment . . . .'") (quoting Jackson v. Johnson, 30 F. Supp. 2d 613, 618 (S.D.N.Y. 1998) (Kaplan, D.J. & Peck, M.J.) (& cases cited therein); accord, e.g., Dunn v. Carrier, 137 F. App'x 387, 389 (2d Cir. 2005); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002). Accordingly, Inesti's damages claims against all of the State defendants in their official capacities are barred by the doctrine of sovereign immunity, and the State defendants' motion to dismiss the official capacity claims should be GRANTED.

122 (2d Cir. 2004); <u>Hernandez</u> v. <u>Keane</u>, 341 F.3d 137, 144 (2d Cir. 2003), <u>cert. denied</u>, 543 U.S.

1093, 125 S. Ct. 971 (2005).<u>17/</u>

> In 1995, the Second Circuit held that:

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

<u>Colon</u> v. <u>Coughlin</u>, 58 F.3d at 873.<u>18/</u>  However, in 2009, the Supreme Court held that:

> In a § 1983 suit . . . —where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title not withstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than

---

17/  See, e.g., <u>Blyden</u> v. <u>Mancusi</u>, 186 F.3d 252, 264 (2d Cir. 1999); <u>Fischl</u> v. <u>Armitage</u>, 128 F.3d 50, 55 (2d Cir. 1997); <u>Colon</u> v. <u>Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995); <u>Allan</u> v. <u>Woods</u>, No. 05-CV-1280, 2008 WL 724240 at *5 (N.D.N.Y. Mar. 17, 2008) ("Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and <u>respondeat superior</u> is an inappropriate theory of liability."); <u>Tafari</u> v. <u>Annets</u>, 06 Civ. 11360, 2008 WL 2413995 at *10 (S.D.N.Y. June 12, 2008) (Peck, M.J.), <u>report & rec. adopted</u>, 2008 WL 4449372 (S.D.N.Y. Oct. 2, 2008), <u>aff'd</u>, 363 F. App'x 80 (2d Cir.), <u>cert. denied</u>, 130 S. Ct. 3475 (2010); <u>Zamakshari</u> v. <u>Dvoskin</u>, 899 F. Supp. 1097, 1109 (S.D.N.Y.1995) (Sotomayor, D.J. & Peck, M.J.) ("In order to maintain a cause of action [under § 1983] against any official, a plaintiff must show that the defendant was personally involved in the alleged deprivation of his constitutional rights, since the doctrine of <u>respondeat superior</u> does not apply to § 1983 actions.").

18/  Accord, e.g., <u>Ziemba</u> v. <u>Clark</u>, 167 F. App'x 831, 833 (2d Cir. 2006); <u>Samuels</u> v. <u>Selsky</u>, 166 F. App'x 552, 556 (2d Cir. 2006); <u>Patterson</u> v. <u>Cnty. of Oneida</u>, 375 F.3d 206, 229 (2d Cir. 2004); <u>Back</u> v. <u>Hastings on Hudson Union Free Sch. Dist.</u>, 365 F.3d at 127; <u>Hayut</u> v. <u>State Univ. of N.Y.</u>, 352 F.3d 733, 753 (2d Cir. 2003); <u>Hernandez</u> v. <u>Keane</u>, 341 F.3d at 145; <u>Wright</u> v. <u>Smith</u>, 21 F.3d at 501; <u>see also</u>, <u>e.g.</u>, <u>Poe</u> v. <u>Leonard</u>, 282 F.3d 123, 140 (2d Cir. 2002).

> knowledge is required to impose . . . liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

Ashcroft v. Iqbal, 556 U.S. at 677, 129 S. Ct. at 1949.  Although the Second Circuit has not weighed in on what remains of Colon after Iqbal, several decisions in this district have concluded that by specifically rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," id., Iqbal effectively nullified several of the classifications of supervisory liability enunciated by the Second Circuit in Colon.  See, e.g., Bellamy v. Mount Vernon Hosp., 07 Civ. 1801, 2009 WL 1835939 at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third Colon categories pass Iqbal's muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred. The other Colon categories impose the exact types of supervisory liability that Iqbal eliminated—situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate."), aff'd, 387 F. App'x 55 (2d Cir. 2010).[19]  While Colon permitted supervisory liability in situations where the supervisor knew of and acquiesced in a constitutional violation committed by a subordinate, these post-Iqbal district court decisions reason that Iqbal's "active conduct" standard imposes liability only where that supervisor directly

---

[19]    Accord, e.g., Joseph v. Fischer, 08 Civ. 2824, 2009 WL 3321011 at *14 (S.D.N.Y. Oct. 8, 2009) ("[U]nder Iqbal, . . . [a] defendant is not liable under section 1983 if the defendant's failure to act deprived the plaintiff of his or her constitutional right."); Newton v. City of N.Y., 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived the Supreme Court's recent decision in Ashcroft v. Iqbal.").

participated in the alleged violation or had a hand in creating a policy or custom under which the unconstitutional practices occurred.

These decisions may overstate <u>Iqbal</u>'s impact on supervisory liability. <u>Iqbal</u> involved allegations of intentional discrimination. <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. at 666, 129 S. Ct. at 1942. Where the alleged constitutional violation involved "invidious discrimination in contravention of the First and Fifth Amendments," <u>Iqbal</u> held that "plaintiff must plead and prove that the defendant acted with discriminatory purpose," whether the defendant is a subordinate or a supervisor. <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. at 676-77, 129 S. Ct. at 1948-49. It was with intent-based constitutional claims in mind, specifically racial discrimination, that the Supreme Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. at 677, 129 S. Ct. at 1949. Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth, Eighth or Fourteenth Amendments, the personal involvement analysis set forth in <u>Colon</u> may still apply.[20]

_____

[20]     <u>See</u>, <u>e.g.</u>, <u>Hodge</u> v. <u>Sidorowicz</u>, 10 Civ. 0428, 2011 WL 6778524 at *16 (S.D.N.Y. Dec. 20, 2011), <u>report & rec. adopted</u>, 2012 WL 701150 (S.D.N.Y. Mar. 6, 2012) (Crotty, D.J.); <u>Sash</u> v. <u>United States</u>, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) (Peck, M.J.); <u>see also</u>, <u>e.g.</u>, <u>Chao</u> v. <u>Ballista</u>, 630 F. Supp. 2d 170, 178 n.2 (D. Mass. July 1, 2009) (noting that the "state of mind required to make out a supervisory claim under the Eighth Amendment—i.e., deliberate indifference—requires less than the discriminatory purpose or intent that Iqbal was required to allege in his suit . . . ."); Michael Avery et al., <u>Police Misconduct: Law & Litigation</u> § 4:5 (2009) (discussing the impact of <u>Iqbal</u> on supervisor liability in § 1983 and <u>Bivens</u> actions); <u>cf.</u> <u>Caiozzo</u> v. <u>Koreman</u>, 581 F.3d 63, 66 (2d Cir. 2009) (the standard is the same for Eighth Amendment and Fourteenth Amendment deliberate indifference claims).

### 2.   Application Of The Personal Involvement Standard To State Supervisory Defendants Hogan and Rabinowitz

#### a.   Hogan

Inesti alleges that he made "numerous unresolved complaints" to both Hogan and Rabinowitz, who "deferr[ed] to and allow[ed] Defendants Tom Tuzel, James Hicks, Gareen Hamilian and Micha[e]l Kunz to over rule past pr[escr]iptions and orders of doctors . . . ." (Dkt. No. 38: Compl. ¶ 135.) Inesti also alleges that Hogan and Rabinowitz "fail[ed] to properly investigate [Inesti's] concerns . . . ." (Compl. ¶ 135.) Inesti further alleges that Hogan and Rabinowitz "created, approved and implemented a practice where unconstitutional acts occurred and allowed the continuation of that practice." (Compl. ¶ 135.) In addition, Inesti alleges that Hogan and Rabinowitz "fail[ed] to properly investigate plaintiff's complaints and order[ed Inesti] to be returned to Rikers Island Correctional Facility (DOCS) with no medication or mental health treatment . . . ." (Compl. ¶ 139.) These allegations appear to assert claims under the Fourteenth Amendment for deliberate indifference to Inesti's medical needs. See Caiozzo v. Koreman, 581 F.3d 63, 71, 72 (2d Cir. 2009) (An "injured state pretrial detainee, to establish a violation of his Fourteenth Amendment due process rights, must prove, inter alia, that the government-employee defendant disregarded a risk of harm to the plaintiff of which the defendant was aware," i.e., the standard is the same whether the claim is brought under the Eighth or Fourteenth Amendments.); Kelsey v. City of N.Y., 306 F. App'x 700, 702 (2d Cir. 2009) ("An official may be found liable for violating a detainee's due process rights if the official was deliberately indifferent to the medical need of a detainee to be protected from himself."); Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir.), cert. denied, 502 U.S. 849, 112 S. Ct. 152 (1991); Henry v. N.Y.C. Hosp. & Health Corp., 00 Civ. 2537, 2000 WL 858345 at *1 (S.D.N.Y. June 28, 2000) (Peck, M.J.). Inesti's allegations as to Hogan appear to satisfy all

of the Colon categories and at least certain claims also appear to satisfy an Iqbal-limiting standard. See, e.g., Sulehria v. City of N.Y., 670 F. Supp. 2d 288, 325 (S.D.N.Y. 2009) ("In Iqbal, the High Court emphasized that liability under section 1983 required proof that the defendant was directly involved in the misconduct, either by participating in it or ordering or authorizing it.").

Accordingly, the State defendants' motion to dismiss Inesti's claims against Hogan in his individual capacity should be DENIED.

### b.    Rabinowitz

Inesti's allegations as to Rabinowitz indicate Rabinowtiz's personal involvement in constitutional violations.  In addition to the allegations involving both Rabinowtiz and Hogan (see above), Inesti alleges that Inesti "made numerous complaints concerning the cruel and mali[c]ious treatment to his person . . . to . . . Rabinowitz[,]" that he objected to treatment verbally to Rabinowitz, that he "continued to make written complaints to . . . Rabinowitz[,]" that Rabinowitz "did not want to treat" him and that Rabinowitz "ordered [Inesti] to . . . be sent back to Rikers Island[,] denying [Inesti] mental health treatment."  (Dkt. No. 38: Compl. ¶¶ 44, 55, 117, 121.) These allegations appear to assert Fourteenth Amendment deliberate indifference and First Amendment retaliation claims.   See cases cited on pages 26-31 below; see also, e.g., Gill v. Pidlypchak, 389 F.3d 379, 383-84 (2d Cir. 2004) (retaliation against a prisoner based on his grievance gives rise to a First Amendment retaliation claim); Roseboro v. Gillespie, 791 F. Supp. 2d 353, 366-69 (S.D.N.Y. 2011) (Peck, M.J.) (same).  Inesti's claims against Rabinowitz fall into all of the Colon categories discussed above and at least some of these allegations fall within an Iqbal-limiting standard.

Accordingly, the State defendants' motion to dismiss Inesti's claims against Rabinowitz, in his individual capacity, should be <u>DENIED</u>.

**B.**   **Inesti Has Alleged Facts Sustaining Two Causes Of Action Against Rabinowitz**

**1.**   **Inesti's Fourteenth Amendment Denial Of Mental Health Treatment Claim Against Rabinowitz Should Not Be Dismissed**

Inesti's second amended complaint can be read to allege a cause of action against Rabinowitz for the denial of mental health treatment while Inesti was hospitalized in Kirby and/or the MPC.  (Dkt. No. 38: Compl. ¶¶ 117, 121, 139; <u>see</u> pages 1-2 above.)  Because Inesti's claim appears to have arisen while he was a pretrial detainee, his claim is analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment.  <u>See</u>, <u>e.g.</u>, <u>City of Revere</u> v. <u>Mass. Gen. Hosp.</u>, 463 U.S. 239, 244, 103 S. Ct. 2979, 2983 (1983); <u>Youngberg</u> v. <u>Romeo</u>, 457 U.S. 307, 315, 102 S. Ct. 2452, 2457 (1982) ("The mere fact that [the patient] has been committed under proper procedures does not deprive him of all substantive liberty interests under the Fourteenth Amendment."); <u>Caiozzo</u> v. <u>Koreman</u>, 581 F.3d 63, 69 (2d Cir. 2009); <u>Weyant</u> v. <u>Okst</u>, 101 F.3d 845, 856 (2d Cir. 1996); <u>Grant</u> v. <u>N.Y.C. Dep't of Corr.</u>, No. 96-2469, 104 F.3d 355 (table), 1996 WL 734052 at *1 (2d Cir. Dec. 23, 1996); <u>Bryant</u> v. <u>Maffucci</u>, 923 F.2d 979, 983 (2d Cir.) (citing <u>Bell</u> v. <u>Wolfish</u>, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861, 1872 n.16 (1979)), <u>cert. denied</u>, 502 U.S. 849, 112 S. Ct. 152 (1991).[21/]

---

[21/]   See also, <u>e.g.</u>, <u>Silvera</u> v. <u>Dep't of Corr.</u>, No. 09-CV-1398, 2012 WL 877219 at *8 (D. Conn. Mar. 14, 2012); <u>Smith</u> v. <u>Hogan</u>, No. 09-CV-0554, 2011 WL 4343978 at *7 (N.D.N.Y. Aug. 1, 2011), <u>report & rec. adopted</u>, 2011 WL 4343809 (N.D.N.Y. Sept. 14, 2011); <u>Hanrahan</u> v. <u>Menon</u>, No. 07-CV-0610, 2010 WL 6427650 at *6-12 (N.D.N.Y. Dec. 15, 2010), <u>report & rec. adopted</u>, 2011 WL 1213171 (N.D.N.Y. Mar. 31, 2011), <u>aff'd</u>, No. 11-1367, --- F. App'x ----, 2012 WL 1764196 (2d Cir. May 18, 2012); <u>Estate of Rodriguez</u> v. <u>Simon</u>, No. 06-CV-0125, 2007 WL 2154238 at *8 (D. Vt. Mar. 30, 2007), <u>report & rec.</u>
(continued...)

The Second Circuit has held that:

> while the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner. . . . Thus, the official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need.

Weyant v. Okst, 101 F.3d at 856; see also, e.g., Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849-50, 118 S. Ct. 1708, 1718 (1998); Caiozzo v. Koreman, 581 F.3d at 70-72; Grant v. N.Y.C. Dep't of Corr., 1996 WL 734052 at *1; Wicks v. Qualtere, Nos. 95-CV-425, 95-CV-426, 1997 WL 176338 at *3 (N.D.N.Y. Apr. 4, 1997) (Pooler, D.J.); Landy v. Irizarry, 884 F. Supp. 788, 801 n.20 (S.D.N.Y. 1995).  The standard for such a claim is the same as one brought by a convicted prisoner under the Eighth Amendment.  Caiozzo v. Koreman, 581 F.3d at 72.

As the Second Circuit has explained, "the deliberate indifference standard embodies both an objective and a subjective prong."  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).[22]  "Objectively, the alleged deprivation must be 'sufficiently serious'. . . ." Id. at 553; Smith v. Carpenter, 316 F.3d at 183-84 ("The objective 'medical need' element measures the severity of the alleged deprivation . . .").[23]  "'The Constitution does not command that inmates be given the kind

---

[21]      (...continued)
         adopted, 2007 WL 2107542 (D. Vt. July 19, 2007).

[22]      Accord, e.g., Fransua v. Vadlamudi, No. 05-1715, 2008 WL 4810066 at *1 (2d Cir. Nov. 3, 2008); Salahuddin v. Goord, 467 F.3d 263, 279-81 (2d Cir. 2006); Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003); Selby v. Coombe, 17 F. App'x. 36, 37 (2d Cir. 2001); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

[23]      See also, e.g., Fransua v. Vadlamudi, 2008 WL 4810066 at *1; Salahuddin v. Goord, 467 F.3d at 279-81; Selby v. Coombe, 17 F. App'x. at 37; Chance v. Armstrong, 143 F.3d at 702.

of medical attention that judges would wish to have for themselves . . . .'" Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986).  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth [or Fourteenth] Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991) (citation omitted); see also, e.g., Dean v. Coughlin, 804 F.2d at 215 ('"[T]he essential test is one of medical necessity and not one simply of desirability.'").  Thus, the constitutional protection is limited to "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" Chance v. Armstrong, 143 F.3d at 702;[24] accord, e.g., Fransua v. Vadlamudi, 2008 WL 4810066 at *1; Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'").

The Second Circuit has stated that determining whether a deprivation is objectively serious entails two inquiries:

> Determining whether a deprivation is an objectively serious deprivation entails two inquiries.  The first inquiry is whether the prisoner was actually deprived of adequate medical care.  As the Supreme Court has noted, the prison official's duty is only to provide reasonable care.  Thus, "prison officials who act reasonably [in response to an inmate health risk] cannot be found liable . . ." and, conversely, failing "to take reasonable measures" in response to a medical condition can lead to liability.
>
> Second, the objective test asks whether the inadequacy in medical care is sufficiently serious.  This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.  For example, if the unreasonable medical care is a failure to

---

[24]   The Second Circuit in Chance v. Armstrong identified several factors that are relevant in determining whether a serious medical condition exists, including "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" 143 F.3d at 702.

> provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious.  Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower.  For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone."  Thus, although we sometimes speak of a "serious medical condition" as the basis for [such a] claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

Salahuddin v. Goord, 467 F.3d at 279-80 (citations omitted, emphasis added); see, e.g., Hale v. Rao, 768 F. Supp. 2d 367, 378 (N.D.N.Y. 2011) ("Mental illness can constitute a serious medical need.") (citing Langley v. Coughlin, 888 F.2d 252, 254 (2d Cir. 1989)).

Where the plaintiff alleges delay or interruption in treatment rather than failure to receive treatment, "the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner."  Smith v. Carpenter, 316 F.3d at 186.  "[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for [these] purposes."  Id. (citing Chance v. Armstrong, 143 F.3d at 702-03).  "The absence of adverse medical effects or demonstrable physical injury is one . . . factor that may be used to gauge the severity of the medical need at issue.  Indeed, in most cases the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm."  Id. at 187 (citations omitted).

"Subjectively, the charged official must act with a sufficiently culpable state of mind."  Hathaway v. Coughlin, 99 F.3d at 553; accord, e.g., Fransua v. Vadlamudi, 2008 WL

4810066 at *1; <u>Salahuddin</u> v. <u>Goord</u>, 467 F.3d at 280-81; <u>Smith</u> v. <u>Carpenter</u>, 316 F.3d at 184

("[T]he subjective 'deliberate indifference' element ensures that the defendant prison official acted

with a sufficiently culpable state of mind."); <u>Selby</u> v. <u>Coombe</u>, 17 F. App'x. at 37; <u>Chance</u> v.

<u>Armstrong</u>, 143 F.3d at 702.  "The required state of mind, equivalent to criminal recklessness, is that

the official knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference."  <u>Hemmings</u> v. <u>Gorczyk</u>, 134 F.3d 104, 108 (2d

Cir. 1998) (quotations omitted, quoting <u>Hathaway</u> v. <u>Coughlin</u>, 99 F.3d at 553 (quoting <u>Farmer</u> v.

<u>Brennan</u>, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994))); <u>see</u>, <u>e.g.</u>, <u>Caiozzo</u> v. <u>Koreman</u>, 581

F.3d at 71 (to establish a violation of his Fourteenth Amendment due process rights, a plaintiff "must

prove, <u>inter alia</u>, that the government-employed defendant disregarded a risk of harm to the plaintiff

of which the defendant was aware").[25/]

       Deliberate indifference may be "manifested by prison doctors in their response to the

prisoner's needs or by prison [officials or] guards in intentionally denying or delaying access to

medical care."  <u>Estelle</u> v. <u>Gamble</u>, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291 (1976) (fn. omitted).

However, an "inadvertent failure to provide adequate medical care" does not constitute "deliberate

---

[25/]    See also, <u>e.g.</u>, <u>Sinkov</u> v. <u>Americor, Inc.</u>, 419 F. App'x 86, 89 (2d Cir. 2011) ("evidence 'that [a defendant] <u>should have</u> been aware that [the detainee] was in immediate danger' was insufficient") (alterations and emphasis in original); <u>Mayo</u> v. <u>Cnty. of Albany</u>, 357 F. App'x 339, 341 (2d Cir. 2009) ("A plaintiff bringing a deliberate indifference claim must therefore demonstrate that the defendant deliberately disregarded knowledge of the harm he knew he could cause as a result of his actions."); <u>Ross</u> v. <u>Westchester Cnty. Jail</u>, 10 Civ. 3937, 2012 WL 86467 at *5 (S.D.N.Y. Jan. 11, 2012) ("Deliberate indifference is a mental state akin to 'recklessness,' and is measured using a 'subjective test' that discerns whether the defendant was 'actually aware of an excessive risk to an inmate's health or safety,' and therefore 'act[ed] with a sufficiently culpable state of mind.'" (citation omitted)); <u>Mercado</u> v. <u>City of N.Y.</u>, 08 Civ. 2855, 2011 WL 6057839 at *4 (S.D.N.Y. Dec. 5, 2011).

indifference." 429 U.S. at 105-06, 97 S. Ct. at 292; accord, e.g., Burton v. N.Y.S. Dep't of Corr.,

93 Civ. 6028, 1994 WL 97164 at *2 (S.D.N.Y. Mar. 21, 1994) (Sotomayor, D.J.).   "Thus, a

complaint that a physician has been negligent in diagnosing or treating a medical condition does not

state a valid claim . . . ." Estelle v. Gamble, 429 U.S. at 106, 97 S. Ct. at 292.[26]  As the Supreme

Court has stated, "[m]edical malpractice does not become a constitutional violation merely because

the victim is a prisoner." Id.; accord, e.g., Smith v. Carpenter, 316 F.3d at 184 ("Because the Eighth

Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort

law, not every lapse in prison medical care will rise to the level of a constitutional violation.");

Hathaway v. Coughlin, 99 F.3d at 553; Burton v. N.Y.S. Dep't of Corr., 1994 WL 97164 at *2.

Inesti has adequately pled that he suffered from a serious mental illness that required

treatment.  His allegations regarding his mental health history, including when he was without

medication and harmed others, buttress this determination.  In addition, he has adequately pled that

at some point, possibly on or after January 8, 2009, after he was found fit to proceed to trial,

Rabinowitz, though aware of Inesti's condition, decided that Inesti was to be no longer treated and

had him transferred to a Rikers Island facility, possibly due to a perception of him as a "nuis[a]nce

and a "troublemaker."  (Compl. ¶¶ 116-18, 121.)

### 2.   Inesti's First Amendment Retaliatory Transfer To Rikers Island Claim Against Rabinowitz Should Not Be Dismissed

To prove a First Amendment retaliation claim, "a prisoner must show '(1) that the

speech or conduct at issue was protected, (2) that the defendant took adverse action against the

---

[26]   Accord, e.g., Salahuddin v. Goord, 467 F.3d at 280; Hathaway v. Coughlin, 99 F.3d at 553; Felipe v. N.Y.S. Dep't of Corr. Servs., No. 95-CV-1735, 1998 WL 178803 at *3 (N.D.N.Y. Apr. 10, 1998) (Pooler, D.J.).

plaintiff, and (3) that there was a causal connection between the protected speech and the adverse

action.'" <u>Espinal</u> v. <u>Goord</u>, 558 F.3d 119, 128 (2d Cir. 2009).[27]

   For the adverse action prong, the plaintiff must show that the defendant's "retaliatory

conduct . . . would deter a similarly situated individual of ordinary firmness from exercising his or

her constitutional rights . . . .  Otherwise, the retaliatory act is simply <u>de minimis</u>, and therefore

outside the ambit of constitutional protection." <u>Dawes</u> v. <u>Walker</u>, 239 F.3d 489, 493 (2d Cir. 2001)

(citations omitted), <u>overruled on other grounds by</u> <u>Swierkiewicz</u> v. <u>Sorema N.A.</u>, 534 U.S. 506, 122

S. Ct. 992 (2002).[28]

   To establish a causal connection between the protected speech and the adverse action,

a court may consider a number of factors, including "any statements made by the defendant

concerning his motivation" and "the temporal proximity between the protected activity and the

defendant's adverse action." <u>Williams</u> v. <u>Muller</u>, 98 Civ. 5204, 2001 WL 936297 at *3 (S.D.N.Y.

Aug. 17, 2001); <u>see</u>, <u>e.g.</u>, <u>Espinal</u> v. <u>Goord</u>, 558 F.3d at 129; <u>Gill</u> v. <u>Jones</u>, 95 Civ. 9031, 2001 WL

---

[27] <u>Accord</u>, <u>e.g.</u>, <u>Kotler</u> v. <u>Donelli</u>, 382 F. App'x. 56, 57 (2d Cir. 2010); <u>Henderson</u> v. <u>Sommer</u>, 08 Civ. 3440, 09 Civ. 0611, 2011 WL 1346818 at *5 (S.D.N.Y. Apr. 1, 2011); <u>Bilal</u> v. <u>N.Y.S. Dep't of Corr.</u>, 09 Civ. 8433, 2010 WL 2506988 at *14 (S.D.N.Y. June 21, 2010) (Peck, M.J.); <u>Garcia</u> v. <u>Watts</u>, 08 Civ. 7778, 2009 WL 2777085 at *9 (S.D.N.Y. Sept. 1, 2009).

[28] <u>Accord</u>, <u>e.g.</u>, <u>Zherka</u> v. <u>Amicone</u>, 634 F.3d 642, 644-45 (2d Cir. 2011); <u>Davidson</u> v. <u>Chestnut</u>, 193 F.3d 144, 150 (2d Cir. 1999); <u>Thaddeus–X</u> v. <u>Blatter</u>, 175 F.3d 378, 396-98 (6th Cir. 1999) (to be actionable, retaliation against a prisoner must be likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment); <u>Henderson</u> v. <u>Sommer</u>, 2011 WL 1346818 at *5; <u>Bilal</u> v. <u>N.Y.S. Dep't of Corr.</u>, 2010 WL 2506988 at *14; <u>Mateo</u> v. <u>Fischer</u>, 682 F. Supp. 2d 423, 433 (S.D.N.Y. 2010); <u>Walker</u> v. <u>Keyser</u>, 98 Civ. 5217, 2001 WL 1160588 at *6 (S.D.N.Y. Oct. 2, 2001) (Chin, D.J.), <u>aff'd</u>, 131 F. App'x. 775 (2d Cir. 2005); <u>Wagnoon</u> v. <u>Gatson</u>, 00 Civ. 3722, 99 Civ. 5872, 2001 WL 709276 at *6 (S.D.N.Y. June 25, 2001); <u>Rivera</u> v. <u>Goord</u>, 119 F. Supp. 2d 327, 340 (S.D.N.Y. 2000).

1346012 at *6 (S.D.N.Y. Nov. 1, 2001); Walker v. Keyser, 2001 WL 1160588 at *6; Rivera v. Goord, 119 F. Supp. 2d at 339.  Prisoners' claims of retaliation, of course, must be examined with skepticism and particular care because they are "'prone to abuse' since prisoners can claim retaliation for every decision they dislike."  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); accord, e.g., Gill v. Pidlypchak, 389 F.3d 379, 385 (2d Cir. 2004) (Scullin, C.D.J., concurring); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003); Dawes v. Walker, 239 F.3d at 491; Jackson v. Johnson, 15 F. Supp. 2d 341, 364 (S.D.N.Y. 1998) (Kaplan, D.J. & Peck, M.J.) (& cases cited therein).

Inesti satisfies his burden with respect to the first prong of the First Amendment retaliation analysis: that the speech or conduct at issue was protected.  "It is well settled that the filing of a prison grievance is a protected activity."  Mateo v. Fischer, 682 F. Supp. 2d at 433.[29]

Inesti also satisfies the second prong by alleging that the adverse action that he suffered was a transfer from one facility to another.  E.g., Davis v. Kelly, 160 F.3d 917, 920 (2d Cir. 1998) ("prison authorities may not transfer an inmate in retaliation for the exercise of

---

[29]    See, e.g., Kotler v. Donelli, 382 F. App'x. at 57 ("There is no dispute that [plaintiff's] activities on the grievance committee were protected."); Gill v. Pidlypchak, 389 F.3d at 384 ("[Plaintiff] has sufficiently alleged . . . participation in protected activity: the use of the prison grievance system . . . ."); Dawes v. Walker, 239 F.3d at 492 (filing of internal prison complaint against a correction officer is protected by the First Amendment); Ayers v. Roberts, No. 05-CV-0889, 2008 WL 2079921 at *6 (W.D.N.Y. May 15, 2008) ("The filing of formal prisoner grievances is among the conduct protected by the First Amendment and thus actionable under § 1983."); Smith v. Woods, No. 03-CV-480, 2006 WL 1133247 at *10 (N.D.N.Y. Apr. 24, 2006) (extending First Amendment protection to prisoner plaintiff's oral complaints to correction officers), aff'd, 219 F. App'x. 110 (2d Cir. 2007), cert. denied, 552 U.S. 1248, 128 S. Ct. 1485 (2008).

constitutionally protected rights"); Meriwether v. Coughlin, 879 F.2d 1037, 1045-46 (2d Cir. 1989) ("Prison officials have broad discretion to transfer prisoners.  They may not, however, transfer them solely in retaliation for the exercise of constitutional rights." (citations omitted)).

As to the third prong, Inesti alleges a causal connection between the protected speech and the adverse action in light of his allegations that he wrote grievances to Rabinowitz, Rabinowitz "did not want to treat [Inesti] with  mental health treatment," Inesti was "lab[e]led a nuis[a]nce and [a] troublemaker" and Rabinowitz ordered Inesti sent back to a Rikers Island facility.  (Dkt. No. 38: Compl. ¶¶ 44, 55, 117, 118, 121.)  Construing Inesti's second amended complaint liberally, Inesti adequately alleges that Rabinowitz retaliated against him for filing grievances.  (Compl. ¶¶ 44, 55, 118.)  The State defendants' motion to dismiss this claim should be DENIED.

### C.    Kunz, Hamilian, Hicks And Tuzel Are Immune From Suit For Damages

Inesti's claims for damages against Kunz, Hamilian, Hicks and Tuzel arising out of what appears to be court-ordered examinations and reports concerning Inesti's competency to proceed in a criminal trial, should be dismissed.  Because such actions are court-ordered, federal district courts accord quasi-judicial immunity from suit for damages to those medical professionals who facilitate such examinations and who prepare such reports.  See, e.g., Henderson v. Heffler, No. 07-CV-0487, 2010 WL 2854456 at *3 (W.D.N.Y. July 19, 2010); Mills v. Luplow, No. 04-CV-0005, 2009 WL 2606240 at *28 (W.D.N.Y. Mar. 31, 2009), report & rec. adopted, 2009 WL 2591762 (W.D.N.Y. Aug. 20, 2009), aff'd, 391 F. App'x 948 (2d Cir. 2010); Hunter v. Clark, No. 04-CV-0920, 2005 WL 1130488 at *2 (W.D.N.Y. May 5, 2005).  Thus, such claims for damages against defendants Kunz, Hamilian, Hicks and Tuzel should be dismissed.

**D.     Inesti's Claims Against Dr. Tuzel Should Not Be Dismissed**

Inesti's claims against Dr. Tuzel appear to state a claim under the Fourteenth Amendment for deliberate indifference to his need for proper mental health treatment, including a claim that Dr. Tuzel injected him with psychotropic medication on multiple occasions without Inesti's consent and while Inesti was physically restrained.  Because Inesti is pro se and this is a motion to dismiss, the Court should deny the State defendants' motion to dismiss these claims so that the facts can be developed through discovery, which is not likely to be expanded by allowing these claims.  See, e.g., Speedmark Transp., Inc. v. Mui, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011) (Peck, M.J.); Sudler v. City of N.Y., 08 Civ. 11389, 2010 WL 68095 at *12 (S.D.N.Y. Jan. 8, 2010) (Peck, M.J.), report & rec. adopted, 2010 WL 726964 (S.D.N.Y. Feb. 19, 2010); William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co., 600 F. Supp. 2d 587, 590 (S.D.N.Y. 2009) (Peck, M.J.) (collecting cases).

**E.     Inesti's Claims Against Borges-Smith Should Be Dismissed Because His Allegations About Her Fail To State A Claim For Deliberate Indifference**

Inesti's § 1983 claims against Borges-Smith, an MPC counselor, appear to arise out of her failure to inform the EMTs of Inesti's mental health status and medications when Inesti was taken by ambulance to Bellevue after striking a nurse.  (Dkt. No. 38: Compl. ¶¶ 60-65.)  Inesti appears to allege that because of Borges-Smith's failure to inform the EMTs of Inesti's condition, Inesti received no mental health treatment while at Bellevue and was released while still needing mental health treatment.  (Compl. ¶¶ 65-68.)  This allegation does not satisfy the Fourteenth Amendment deliberate indifference standard, and thus all claims against Borges-Smith should be dismissed.  See, e.g. Harriman v. Hancock Cnty., No. Civ. 08-122, 2009 WL 902073 at *19 (D. Me. Mar. 31, 2009) (summary judgment in favor of county jail officials because, inter alia, correction

officers' failure to report to their supervisor and emergency medical technicians a prisoners' prior seizures did not constitute deliberate indifference), report & rec. adopted, 2009 WL 2508160 (D. Me. Aug. 17, 2009), aff'd, 627 F.3d 22 (1st Cir. 2010); Jackson v. Epps, No. 04CV384, 2006 WL 1674301 at *1, *4 (S.D. Miss. June 14, 2006)  (granting summary judgment in favor of a correction official who allegedly failed to inform a prison nurse that the prisoner-plaintiff was experiencing "dry mouth," a purported heart attack symptom).

## IV.   THE  CITY  DEFENDANTS'  MOTION  TO  DISMISS  SHOULD  BE  DENIED, EXCEPT AS TO OFFICIAL CAPACITY CLAIMS

Inesti's allegations against Captains Dunbar and Pressley can be construed as claiming that they unlawfully punished Inesti, a pretrial detainee, by denying him food, and possibly access to water, recreation time, showers, medical treatment and mental health treatment when they were on duty.  (See pages 2-3 above.)

### A.   Personal Involvement Of City Defendants Captains Dunbar And Pressley

Captains Dunbar and Pressley allegedly "did not consider [Inesti's] mental illness and simply stored . . . [him] like livestock in a dirty cell for long periods of time with no out of cell relief or mental health treatment." (Dkt. No. 38: Compl. ¶ 16.)  Captain Pressley allegedly told Inesti that he was "'never going to eat.'"  (Compl. ¶ 23.)  Inesti also alleges that he "was denied food[,] clothing[,] recreational out of cell time[,] showers[, water] and mental health treatment" by Captains Dunbar and Pressley.  (Compl. ¶¶ 36, 105.)  These allegations adequately allege Captain Dunbar's and Captain Pressley's personal in involvement in actions and inaction that are the basis for and conditions of confinement claims under the Fourteenth Amendment.  See, e.g., Smith v. Hogan, No. 09-CV-0554, 2011 WL 4343978 at *7 (N.D.N.Y. Aug. 1, 2011) (analysis of alleged denial of life's necessities of a civilly committed plaintiff under the Due Process Clause of the Fourteenth

Amendment), report & rec. adopted, 2011 WL 4343809 (N.D.N.Y. Sept. 14, 2011); Nolley v. Cnty.

of Erie, No. 07-CV-0488, 2008 WL 859165 at *6 (W.D.N.Y. Mar. 31, 2008) (pretrial detainee

conditions of confinement claim analyzed under the Fourteenth Amendment); Curry v. Kerik, 163

F. Supp. 2d 232, 235-36 (S.D.N.Y. 2001) (pretrial detainee conditions of confinement).

Accordingly, the City defendants' motion to dismiss claims against Captains Dunbar and Pressley

in their individual capacities for lack of personal involvement  should be DENIED.[30/]

---

[30/]    Official capacity claims against municipal officials are treated as raised against the
municipality itself.  See e.g., Brandon v. Holt, 469 U.S. 464, 471-72, 105 S. Ct. 873, 878
(1985) ("a judgment against a public servant 'in his official capacity' imposes liability on the
entity that he represents"); Coon v. Town of Springfield, 404 F.3d 683, 687 (2d Cir. 2005)
("a § 1983 suit against a municipal officer in his official capacity is treated as an action
against the municipality itself"); Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001)
("the claim against defendants . . . in their official capacity is essentially a claim against the
village").  It is well established that a municipality may not be held liable under Section 1983
for alleged unconstitutional actions by its employees below the policy-making level solely
upon the basis of respondeat superior. E.g., Monell v. Dep't of Soc. Servs. of City of N.Y.,
436 U.S. 658, 694, 98 S. Ct. 2018, 2037–38 (1978); Patterson v. Cnty. of Oneida, 375 F.3d
206, 226 (2d Cir. 2004); DeCarlo v Fry, 141 F.3d 56, 61 (2d Cir. 1998); Zahra v. Town of
Southold, 48 F.3d 674, 685 (2d Cir. 1995); Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119,
122 (2d Cir. 1991).  Rather, in order to hold a municipality liable under § 1983 for the
unconstitutional acts of its employees, the plaintiff must plead and prove that the violation
of constitutional rights resulted from a municipal custom or policy.  See, e.g., Pembaur v.
City of Cincinnati, 475 U.S. 469, 478-83, 106 S. Ct. 1292, 1297-300 (1986); Costello v. City
of Burlington, 632 F.3d 41, 49 (2d Cir. 2011); Dwares v. City of N.Y., 985 F.2d 94, 100 (2d
Cir. 1993), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122
S. Ct. 992 (2002); Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).  The plaintiff need
not identify an explicit, official policy or practice.  See, e.g., Patterson v. Cnty. of Oneida,
375 F.3d at 226; Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992). It is
sufficient to show a widespread pattern of behavior that constitute a "custom or usage with
the force of law" or "the constructive acquiescence of senior policy-making officials."
Patterson v. Cnty. of Oneida, 375 F.3d at 226 (quotations omitted); see, e.g., Belpasso v.
City of N.Y., 07 Civ. 3627, 2008 WL 2676579 at *5 (S.D.N.Y. July 2, 2008); Gorton v.
Gettel, 04 Civ. 0236, 2007 WL 2154193 at *9 (S.D.N.Y. June 22, 2007), aff'd, 554 F.3d 60
(2d Cir. 2009).  "A policy, custom, or practice may also be inferred where 'the municipality
so failed to train its employees as to display a deliberate indifference to the constitutional
rights of those within its jurisdiction.'"  Patterson v. Cnty. of Oneida, 375 F.3d at 226.  Any
(continued...)

**B.**   **Legal Standard As To Conditions Of Confinement Of Pretrial Detainees**

The Supreme Court has held that because:

[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime[,] . . . the Government . . . may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.

Bell v. Wolfish, 441 U.S. 520, 536-37, 99 S. Ct. 1861, 1872-73 (1979); see, e.g., Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995); Schall v. Martin, 467 U.S. 253, 269, 104 S. Ct. 2403, 2412 (1984); Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009) (pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, because pretrial detainees cannot be punished); Benjamin v. Fraser, 264 F.3d 175, 188 (2d Cir. 2001).[31]

Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense . . . .  And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible

---

[30]   (...continued)
analysis of an allegation of municipal liability under § 1983 begins with "the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989).

Inesti's second amended complaint alleges no facts demonstrating a policy or custom of the City of New York, nor can such a policy or custom that is associated with the alleged violations of his federally protected rights be inferred.  Therefore, the City defendants' motion to dismiss Inesti's official capacity claims against them should be GRANTED.

[31]   See also, e.g., Woodward v. Morgenthau, 740 F. Supp. 2d 433, 438 (S.D.N.Y. 2010); Banks v. Stewart, 08 Civ. 7463, 2010 WL 2697075 at *9-10 (S.D.N.Y. July 6, 2010); Walker v. Shaw, 08 Civ. 10043, 2010 WL 2541711 at *8 (S.D.N.Y. June 23, 2010); Davis v. Shaw, 08 Civ. 0364, 2009 WL 1490609 at *1 (S.D.N.Y. May 20, 2009); Smart v. City of N.Y., 08 Civ. 2203, 2009 WL 862281 at *9 (S.D.N.Y. Apr. 1, 2009).

> and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

Bell v. Wolfish, 441 U.S. at 537, 99 S. Ct. at 1873.

> In regard to the demonstration of punishment,

> [a]bsent a showing of an expressed intent to punish, the determination whether a condition is imposed for a legitimate purpose or for the purpose of punishment "generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."

Benjamin v. Fraser, 264 F.3d at 188 (quoting Bell v. Wolfish, 441 U.S. at 538, 995 S. Ct. at 1874) (alteration in original). This has been applied in the context of the distribution or allowances of food, water, showers, periods of exercise, medical treatment and mental health treatment to pretrial detainees. See, e.g., Azor v. City of N.Y., No. 08-CV-4473, 2012 WL 1117256 at *4 (E.D.N.Y. Mar. 30, 2012) (food and bathing); Felmine v. City of N.Y., No. 09-CV-3768, 2011 WL 4543268 at *22 (E.D.N.Y. Sept. 29, 2011) (food); Waters v. Luxama, 09 Civ. 4728, 2011 WL 1226421 at *2 (S.D.N.Y. Mar. 24, 2011) (food); Smart v. City of N.Y., 2009 WL 862281 at *9 (food, water and bathroom); Ruffino v. Lantz, No. 08-CV-1521, 2009 WL 3571306 at *3 (D. Conn. Oct. 28, 2009) (recreation); Webster v. City of N.Y., 333 F. Supp. 2d 184, 200 (S.D.N.Y. 2004) (food and water); Curry v. Kerik, 163 F. Supp. 2d 232, 235-36 (S.D.N.Y. 2001) (unsanitary and hazardous showering); Heisler v. Kralik, 981 F. Supp. 830, 838 (S.D.N.Y. 1997) (showers and recreation), aff'd, No. 97-2869, 164 F.3d 618 (table), 1998 WL 636985 (2d Cir. July 21, 1998); Davidson v. Coughlin, 968 F. Supp. 121, 134 (S.D.N.Y. 1997) (exercise); Cuoco v. Hershberger, 93 Civ. 2806, 1996 WL 648963 at *8 (S.D.N.Y. Nov. 6, 1996) (medical care); Irrizarry v. Kenny, 92 Civ. 1511, 1995 WL 678747 at *4 (S.D.N.Y. 1995) (medical care); see also, e.g., Silvera v. Conn. Dep't of Corr., 726 F. Supp. 2d 183, 190 (D. Conn. 2010) (discussion of the adequacy of mental health treatment in the

context of a pretrial detainee Fourteenth Amendment analysis); Atkins v. Cnty. of Orange, 372 F.

Supp. 2d 377, 407-10 (S.D.N.Y. 2005) (discussion of the deprivation of mental health treatment),

aff'd on other other grounds, 248 F. App'x 232 (2d Cir. 2007); Burke v. Warren Cnty. Sheriff's Dep't,

No. 90-CV-0597, 1994 WL 675042 at *5 (N.D.N.Y. Nov. 25, 1994) (mental health treatment).

      Punishment has been found when a correctional official denies a prisoner a necessity

of life over a period of several months whenever that official was working.  See, e.g., Robles v.

Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) ("While no court has explicitly held that denial of food is

a per se violation of a prisoner's Eighth Amendment rights, under certain circumstances a substantial

deprivation of food may well be recognized as being of constitutional dimension." (citation

omitted)); Cunningham v. Jones, 567 F.2d 653, 659-60 (6th Cir. 1977) (remanding for a

determination of nutritional adequacy where a prisoner alleged he was served only one meal per day

for fifteen days); Murphy v. Andrews, No. 10-CV-0508, 2011 WL 5878351 at *4 (E.D. Tex. Oct.

11, 2011), report & rec. adopted, 2011 WL 5878347 (E.D. Tex. Nov. 23, 2011); Cruz v. Church, No.

05-CV-1067, 2008 WL 4891165 at *12 (N.D.N.Y. Nov. 10, 2008) ("If . . . meals[] are withheld from

a prisoner on an isolated basis, such conduct, though not necessarily to be condoned, does not

typically rise to a level of constitutional significance."); Beckford v. Portuondo, 151 F. Supp. 2d

204, 213 (N.D.N.Y. 2001) ("When a prison guard deprives a prisoner of two of the regularly three

meals served each day, the objective prong of the Eighth Amendment may be met if the defendants

do not satisfy their burden of showing that the one meal served is nutritionally adequate."); Moss

v. Ward, 450 F. Supp. 591, 594, 596-97 (W.D.N.Y. 1978) (deprivation of all of a prisoner's meals

for four days and giving him only one meal each day for the next three days was grossly

disproportionate punishment under the Eighth Amendment).

Absent a demonstration of an intent to punish, allegations of deprivation of the life necessities of a pretrial detainee are subject to the deliberate indifference analysis discussed above. (See cases on pages 38-40 above.)  See, e.g., Cruz v. Reiner, No. 11-CV-2131, 2011 WL 6204101 at *4 (E.D.N.Y. Dec. 12, 2011); Lesane v. City of N.Y., 11 Civ. 2104, 2011 WL 5242721 at *2 (S.D.N.Y. Nov. 3, 2011); Felmine v. City of N.Y., 2011 WL 4543268 at *21; Kondziela v. Cnty. of Erie, No. 09-CV-0601, 2011 WL 4055163 at *3 (W.D.N.Y. Sept. 12, 2011); Dilworth v. Goldberg, 10 Civ. 2224, 2011 WL 3501869 at *19 (S.D.N.Y. July 28, 2011), report & rec. adopted, 2011 WL 4526555 (S.D.N.Y. Sept. 30, 2011); Waters v. Luxama, 2011 WL 1226421 at *2; Bourdon v. Roney, No. 99-CV-0769, 2003 WL 21058177 at *10 (N.D.N.Y. Mar. 6, 2003); Curry v. Kerik, 163 F. Supp. 2d at 236.

### C.    Application Of The Conditions Of Confinement Legal Standard To Inesti's Complaint

Inesti alleges that during his ninety-day stay in SHU, Captains Dunbar and Pressley intended to deny him food, and perhaps water, showers, exercise or recreation, medical treatment and mental health treatment while each of these defendants were on duty.  (See pages 2-3 above.) Intent can be inferred from the allegation that over a period of ninety days (not a period of mere hours or days), Inesti allegedly was denied food, and perhaps other necessities of life, during each of the eight-hour shifts that these defendants worked.  (Dkt. No. 38: Compl. ¶¶ 17-21, 33.)  Captain Pressley's intent to punish is additionally and more overtly demonstrated by Inesti's allegation that Captain Pressley "would come to [Inesti's] cell and torment [Inesti] with statements and remarks [like,] 'I run this shit' [and] 'You['re] never going to eat.'"  (Compl. ¶ 23.)  In the alternative, Inesti has pled that Captains Dunbar and Pressley denied him of at least one of life's necessities – food – and perhaps water, bathing, exercise, medical treatment and mental health treatment during each of

their shifts during the time period mentioned above and did so with deliberate indifference.  (Compl. ¶¶ 17-22, 25, 33-34, 36.)  Inesti's allegations adequately allege that both Captains Dunbar and Pressley were deliberately indifferent to the deprivations of Inesti's life necessities such as food, and the City defendants' motion to dismiss therefore should be DENIED.

## V.   INESTI'S CLAIMS FOR INJUNCTIVE RELIEF AND DECLARATORY RELIEF SHOULD BE DISMISSED AS HE LACKS STANDING

Inesti seeks injunctive relief from the Court directing the State defendants "to promptly follow all policy[,] procedures[,] laws and ordinances that protect the mentally ill from negligence and [to] place [Inesti] in a psyc[hi]atric hospital."  (Dkt. No. 38: Compl. ¶ 142.)  Inesti also seeks declaratory relief with respect to his claims against both the City and State defendants. (Compl. ¶¶ 136-40.)

### A.   The Court Cannot Overturn Inesti's Conviction And Order His Placement In A Mental Health Facility

The Supreme Court has held "that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S. Ct. 1827, 1841 (1973); see, e.g., Jenkins v. Haubert, 179 F.3d 19, 22-23 (2d Cir. 1999); see also, e.g., Wilkinson v. Dotson, 544 U.S. 74, 81-82, 125 S. Ct. 1242, 1248 (2005) ("a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration").  Therefore, to

the extent that Inesti seeks to have his conviction overturned in an effort to be placed in a mental health facility, his claims for injunctive relief should be dismissed.

**B.**      **Inesti Lacks Standing To Raise Claims For Injunctive And Declaratory Relief**

Inesti's claims for injunctive relief and declaratory relief should be dismissed because he lacks standing to raise such claims. "To establish standing in federal court, any party bringing a lawsuit must allege an actual case or controversy." Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998). "Specifically, a plaintiff must demonstrate that (1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury." Id. "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." Id. Inesti filed his original complaint after he had been convicted and was incarcerated in a state prison. At that point, he was no longer in the custody of any of the named State defendants or City defendants. Inesti has not alleged any facts demonstrating that he is likely to be in the GRVC, MPC or Kirby in the future. Therefore, Inesti's claims for injunctive and declaratory relief should be dismissed as he lacks the standing to seek such relief. See, e.g., Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."); Fletcher v. U.S. Parole Comm'n, 550 F. Supp. 2d 30, 46 (D.D.C. 2008) (former prisoner "is not likely to suffer a future injury from continued implementation of the challenged federal reparole regulation. Hence, he lacks standing to pursue prospective injunctive or declaratory relief."); Schwartz v. Snohomish Cnty., No. 05-732, 2006 WL 692024 at *8 (W.D. Wash. Mar. 17, 2006) ("Because Plaintiff is no longer an inmate at the [correctional facility], his [§ 1983] claims for declaratory relief are moot.");

Slade v. Gates, No. 01-8244, 2002 WL 31357043 at *3-4 (C.D. Cal. Oct. 2, 2002) (dismissing

former prisoner's claims for injunctive relief with respect to illegal police actions because he did not

allege that he faces "a realistic threat of future constitutional violations by [police] officers");

Newman v. Holder, 101 F. Supp. 2d 103, 107 (E.D.N.Y. 2000) (injunctive relief claims arising from

Brooklyn federal prison dismissed as moot because prisoner-plaintiffs were no longer incarcerated

there).

## CONCLUSION

   For the reasons stated above, the State defendants' and City defendants' motions to

dismiss (Dkt. Nos. 40, 42) should be DENIED, except as follows:

   1. Inesti's official capacity claims for damages against the State defendants and
     the City defendants should be dismissed.

   2. Inesti's individual capacity claims for damages against Kunz, Hamilian,
     Hicks and Tuzel arising out their court-ordered examinations and reports
     concerning Inesti's competency to proceed in a criminal trial should be
     dismissed.

   3. Inesti's claims against Borges-Smith should be dismissed.

   4. Inesti's claims for injunctive and declaratory relief should be dismissed.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

   Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be

filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable

Paul A. Crotty, 500 Pearl Street, Room 735, and to my chambers, 500 Pearl Street, Room 1370.

Any requests for an extension of time for filing objections must be directed to Judge Crotty (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

## SCHEDULING ORDER

The Court will hold a conference on July 6, 2012 at 11:00 a.m. to discuss the appropriate sequence and timing of discovery.  Counsel for the State defendants shall arrange for Inesti's telephonic participation (by his calling 212-805-0036) at the conference.

Dated:      New York, New York
            June 22, 2012

Respectfully submitted,

**Andrew J. Peck**
United States Magistrate Judge

Copies **by ECF** to:    Mark Inesti (Mail)
                         Jason Alan Buskin, Esq.
                         Charles Edward Carey, Esq.
                         Chlarens Orsland, Esq.
                         Judge Paul A. Crotty