```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
MARK INESTI,                                          :
                                                      :
                  Plaintiff,                          :
                                                      :   11 Civ. 2596 (PAC) (AJP)
         -against-                                    :
                                                      :   ORDER ADOPTING REPORT
MICHAEL F. HAGAN, PhD., et al.                        :   AND RECOMMENDATION
                                                      :
                  Defendants.                         :
-------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 4, 2012
```

HONORABLE PAUL A. CROTTY, United States District Judge:

    Pro se Plaintiff Mark Inesti (a/k/a Hector Ortiz) ("Inesti") brings this 42 U.S.C. § 1983 action, alleging violations of his federal constitutional rights by nine New York City and New York State officials. Inesti's claims against the City arise out of the conditions of his confinement and failure to receive treatment for mental illness while he was held by the New York City Department of Corrections ("DOC") on Rikers Island. He also asserts claims against the State relating to treatment he received at mental health facilities operated by the New York State Office of Mental Health.

    On May 17, 2011, the Court referred this case to Magistrate Judge Andrew J. Peck for general pretrial supervision and dispositive motions. (Docket No. 7.) On October 24, 2011, the City and State Defendants each moved to dismiss Inesti's Complaint pursuant to Fed.R.Civ.P. 12(b)(6). On June 22, 2012, Magistrate Judge Peck issued a Report and Recommendation ("R&R") recommending that Defendants' motions to dismiss be granted in part and denied in part. Defendants filed timely objections to the R&R. The Court has reviewed the R&R and Defendants' objections. For the reasons set forth below, the Court adopts the R&R. Defendants' motions to dismiss are granted in part and denied in part.

# BACKGROUND[1]

## A. Facts

Although Inesti's allegations as to relevant time periods are somewhat vague, the events in this case appear to span a three-year period from 2006 to the beginning of 2009. Inesti alleges that while he was detained on Rikers Island,[2] he was diagnosed with schizoaffective one disorder and prescribed medication. He contends that he received a misbehavior report because of his illness. A disciplinary hearing followed, at which Inesti was sentenced to ninety days in the Special Housing Unit ("SHU"). Inesti alleges that during this period, corrections staff locked him in his cell for twenty-four hours a day and denied him showers. He also alleges that staff denied him meals while City Defendants Sherma Dunbar and Anna Pressley, both captains at Rikers, were on duty. Captain Pressley allegedly told Inesti, "I run this shit," and "you['re] never going to eat." Inesti contends that he banged on his cell door "to dispel[] demonic activity" while asking for mental health treatment, resulting in pain and swelling to his legs and ankles. He received no mental health treatment or medication for his pain. Inesti further asserts that he was subjected to unjustified, daily strip searches under Captain Dunbar's orders.

At the end of Inesti's ninety-day SHU sentence, he was transferred to a state facility, the Manhattan Psychiatric Center ("MPC"), by court order. At the MPC, Inesti was diagnosed with schizoaffective one disorder and was prescribed medication. Inesti alleges that he was placed in a twenty-four month in-patient program against his wishes, and that staff housed him in an area reserved for violent patients. Inesti claims that staff members from MPC and the Kirby Forensic Psychiatric Center ("Kirby") sedated him via injections because he had become combative. He contends that staff then left him in a room without a bed, and that he lost control of his torso and legs and urinated on himself as a result of the injections. Inesti alleges that he filed numerous

---

[1] All facts are taken from the June 22, 2012 R&R unless otherwise noted.
[2] The Complaint does not specify when Inesti was detained on Rikers Island, or for what criminal charges.

written complaints to Defendant Steven Rabinowitz, director of the MPC and Kirby. Inesti was later transferred to an MPC transitional unit, where he refused to take his medication, became delusional and struck a nurse. Inesti's violence prompted Defendant Lucy Borges-Smith, Acting Counselor at MPC, to call an ambulance to transport Inesti to Bellevue Hospital Center ("Bellevue"). Inesti alleges that Borges-Smith failed to inform the paramedics of his mental health status, or provide them with the appropriate medical records.

Bellevue subsequently released Inesti without any mental health treatment, and he proceeded to wander the streets of New York City in a delusional state. He alleges that he ultimately returned to the MPC, where Borges-Smith had him arrested on assault charges. Inesti was then taken back to Rikers Island, where he received mental health treatment and medication. After a court hearing, Inesti was released from DOC custody without further treatment, and was allowed to wander the streets until he returned to the MPC, where he was arrested once again and returned to Rikers Island. He alleges that this "revolving door" cycle of arrest-and-release continued from 2006 to 2008.

On August 8, 2008, Inesti was arrested for acts committed while delusional. He was sent to Bellevue the same day for a court-ordered examination, where he struck an officer and was given medication. He was once again returned to Rikers Island, where he was housed in the SHU from August 8 to November 21, 2008. Inesti alleges that during this period, Captains Dunbar and Presley again denied him food, clothing, recreation time, showers, and mental health treatment.

On November 21, 2008, Inesti was transferred to Kirby after he was found unfit to proceed in a criminal trial. At Kirby, Defendants Drs. Hamilian, Hicks, and Kunz interviewed Inesti and diagnosed him with schizoaffective one disorder. Inesti struck a Kirby staff member

while suffering a delusion, and Defendant Dr. Tom Tuzel ordered Inesti be sedated.  Dr. Tuzel also prescribed Risperdal for Inesti, and ordered that he be injected with psychotropic medications on multiple occasions without consent.

On January 8, 2009, Kunz and Hicks found Inesti fit to proceed with trial.  Inesti alleges that this "diagnosis" was false, and that as a result of proceeding to trial, he was sentenced to a twenty year-to-life term of imprisonment "for a crime that was propelled by [his] mental illness . . . ."  (R&R at 6.)

Inesti also claims that he felt helpless under Dr. Tuzel's care and filed a written complaint with Rabinowitz.  He contends that Rabinowitz ordered Inesti back to Rikers Island without further treatment.

Lastly, Inesti alleges that since he was repeatedly transferred between facilities, his medication was automatically discontinued, and he was required to undergo re-examination with each transfer.  This process took "days to weeks" and caused Inesti to suffer continued mental illness while he was without medication.

**B.  Procedural history**

Inesti filed his original Complaint by mail from the Clinton Correctional Facility.  The Complaint is dated April 20, 2010, but the envelope in which it was mailed was postmarked on April 7, 2011.  Inesti amended his Complaint twice, once on October 11, 2011, and again on November 29, 2011.  In his Second Amended Complaint, Inesti seeks compensatory and punitive damages, as well as declaratory and injunctive relief, for alleged constitutional violations pursuant to 42 U.S.C. § 1983.

On January 12, 2012, Defendants moved to dismiss Inesti's Second Amended Complaint. In their Rule 12(b)(6) motion, State Defendants argue: (1) Inesti's claims are barred by the

statute of limitations; (2) Defendants Michael Hogan, Commissioner of the New York State Office of Mental Health, and Rabinowitz were not personally involved in any alleged deprivation of Inesti's rights; (3) the Second Amended Complaint does not state facts alleging a violation of any constitutional right or federal statute; (4) Inesti's claims against the State Defendants in their official capacities are barred by the Eleventh Amendment; and (5) Inesti lacks standing to seek injunctive relief, and his claim is moot.

City Defendants moved to dismiss Inesti's claims on the grounds that: (1) all of Inesti's claims before his August 9, 2008, incarceration are barred by the statute of limitations; (2) Inesti fails to allege the personal involvement of either City Defendant in his remaining claims; (3) Inesti's remaining claims as to his medical needs and conditions of confinement do not satisfy even the liberal pro se pleading standards; and (4) Inesti fails to state a claim for municipal liability.

**C. Magistrate Judge Peck's R&R**

On June 22, 2012, Magistrate Judge Peck issued an R&R recommending that Defendants' motions to dismiss should be granted in part and denied in part.

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "take [ ] factual allegations [in the complaint] to be true and draw [ ] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). Although a complaint need not contain detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). As pro se litigants "are entitled to a liberal construction of their pleadings, [their complaints] should be

read to raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citation and internal quotation marks omitted).

In determining the sufficiency of a complaint, the Court may consider "the factual allegations in [the] . . . complaint, . . . documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which the plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.1993).

    1.  Statute of Limitations

Section 1983 claims that accrue in New York are governed by a three-year statute of limitations set forth in N.Y. C.P.L.R. § 214(5). See Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997). A cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Pinaud v. County of Suffolk, 52 F.3d 1139, 1156 (2d Cir.1995). Thus, "a section 1983 plaintiff asserting deprivation of liberty, whose claim would be time-barred if it accrued at the time of confinement, must plead facts indicating that he was not able to comprehend the nature of his circumstances when he was taken into custody." Ormiston, 117 F.3d at 71.

As Inesti signed his original Complaint on April 20, 2010, under the "prison mailbox rule" the Court would normally deem this action filed on that date, absent contrary information. See Houston v. Lack, 487 U.S. 266, 270 (1988). Here, however, the original Complaint was mailed from the Clinton Correctional Facility in an envelope postmarked April 7, 2011. Magistrate Judge Peck found that since Inesti did not specify when he gave his original Complaint to prison officials for delivery to the Court, the Court should assume that Inesti gave his original Complaint to prison officials on April 7, 2011. (R&R at 14-15.) Absent tolling,

Magistrate Judge Peck found that Inesti's section 1983 claims that accrued before April 7, 2008 would be untimely.

      2.    Tolling of the Statute of Limitations

"Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983." Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 2007) (citation omitted). New York law provides that where a plaintiff:

> is under a disability because of . . . insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases, . . . the time within which the action must be commenced shall be extended to three years after the disability ceases . . . .

N.Y. C.P.L.R. § 208. This "insanity" tolling provision does not defeat the goals of section 1983. See Keitt v. City of N.Y., 09 Civ. 5663, 2010 WL 3466175 at *7 (S.D.N.Y. Aug. 9, 2010), report & rec. adopted, 2010 WL 3466079 (S.D.N.Y. Sept. 2, 2010). The provision is interpreted narrowly and applies "to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society." McCarthy v. Volkswagen of Am., Inc., 55 N.Y.2d 543, 548 (1982). "Difficulty in functioning is not sufficient to establish insanity for purposes of § 208; rather, the plaintiff must be totally unable to function as a result of a severe and incapacitating disability." Washington v. Doe, No.08 Civ 4399, 2011 WL 679919, at *2 (E.D.N.Y. Feb. 16, 2011) (internal quotations and citations omitted). "Furthermore, the disability of insanity must have been continuous during the relevant period." Id. Section 208 does not define the term "insanity," and an individual's mental capacity is "largely a factual question." McCarthy, 55 N.Y.2d at 548.

Magistrate Judge Peck found that Inesti alleged sufficient facts in order to trigger the tolling provision under section 208. Inesti alleged that he "hear[d] voices" while detained on Rikers Island, and that he banged on his cell door "to dispel[] demonic activity." He was hospitalized in the MPC pursuant to court order and diagnosed with "schizoaffective one disorder." Inesti also alleged that while on the MPC transitional unit, he became delusional and struck a nurse. Accordingly, Magistrate Judge Peck found that there is a factual question as to whether Inesti suffered from continuous insanity during the running of the limitations period for claims that accrued prior to April 7, 2008. Magistrate Judge Peck therefore recommended that the Court deny Defendants' motions to dismiss Inesti's claims as untimely. (R&R at 19.)

  3. <u>Defendants Hogan and Rabinowitz's Personal Involvement</u>

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006) (internal quotation omitted). To establish a defendant's personal involvement for purposes of section 1983, a plaintiff must show that the defendant: (1) participated directly in the alleged constitutional violation; (2) failed to remedy a wrong after learning of it; (3) created a policy or custom under which the violation occurred, or allowed such a policy or custom to continue; (4) was grossly negligent in supervising subordinates who committed the alleged violation; or (5) was deliberately indifferent to ongoing unconstitutional acts. <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995). The Supreme Court's decision in <u>Iqbal</u> has called the <u>Colon</u> test into question. <u>See</u> 556 U.S. at 677 (stating that in the context of assessing qualified immunity in a 1983 suit, "purpose rather than knowledge is required to impose . . . liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities"); <u>Bailey v. Pataki</u>, No. 8 Civ. 8563, 2010

8

WL 4237071, at *3 (S.D.N.Y. Oct. 26, 2010) (stating that Iqbal "severely restricted . . . although . . . not entirely eliminated" the scope of supervisory liability). The Second Circuit has not yet ruled on whether any or all of the Colon factors survive the Supreme Court's ruling in Iqbal.[3]

Magistrate Judge Peck found that Inesti's claims against Hogan and Rabinowitz satisfy all of the Colon factors, and several claims also satisfy the narrower standard set forth under Iqbal. (R&R at 24-25.) Inesti alleges that both Hogan and Rabinowitz ignored his complaints; allowed others to discontinue his prescribed medication; created and approved a practice where unconstitutional acts occurred; and sent him to Rikers Island without medication or a mental health treatment plan. Magistrate Judge Peck found that these allegations assert claims under the Fourteenth Amendment for deliberate indifference to Inesti's medical needs. See Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996).

Magistrate Judge Peck also found that Inesti's allegations raise First Amendment retaliation claims against Rabinowitz. To allege a First Amendment retaliation claim, "a prisoner must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (citation omitted). Magistrate Judge Peck found that Inesti engaged in protected activity when he filed prison grievances. See Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003) ("[T]he filing of prison grievances is a constitutionally protected activity . . . ."). Inesti also alleged that in retaliation for his complaints, he was repeatedly transferred between facilities. See Davis v. Kelly, 160 F.3d 917, 920 (2d Cir. 1998) (stating that prisoner has no constitutionally protected interest in remaining at particular correctional facility, but may not be transferred in retaliation

---

[3] In light of Iqbal, courts in this district are divided as to what forms of supervisory conduct can give rise to liability under section 1983. See Fountain v. City of New York, No. 10 Civ. 7538, 2012 WL 1372148, at *3 (S.D.N.Y. April 18, 2012) (citing cases).

for engaging in protected activity). Lastly, Inesti asserted that Rabinowitz "lab[e]led [him] a nuis[a]nce and [a] troublemaker" and ordered Inesti be sent back to Rikers Island "possibly on or after January 8, 2009, after he was found fit to proceed to trial." (R&R at 31.) Based on these allegations in the Second Amended Complaint, Magistrate Judge Peck found that Inesti alleged a First Amendment retaliation claim against Rabinowitz.

Accordingly, Magistrate Judge Peck recommended that the Court deny State Defendants' motions to dismiss Inesti's claims against Hogan and Rabinowitz in their individual capacity.

    4.   <u>Inesti's Claims Against Defendants Kunz, Hamilan, Hicks, and Tuzel Arising from Court-Ordered Examinations</u>

Magistrate Judge Peck dismissed Inesti's claims for damages arising out of court-ordered examinations and reports concerning Inesti's competency to stand trial. Other courts considering this issue have held that doctors performing psychiatric or psychological evaluations pursuant to court order are entitled to immunity for preparing their reports. <u>See</u> <u>Hughes v. Long</u>, 242 F.3d 121 (3d Cir. 2001); <u>Moses v. Parwatikar</u>, 813 F.2d 891 (8th Cir. 1987); <u>Henderson v. Heffler</u>, No. 07 Civ. 0487, 2010 WL 2854456, at *3 (W.D.N.Y. July 19, 2010); <u>Saunders-El v. Fisher</u>, No. 10 Civ. 264, 2010 WL 6729155, at *4 (E.D. Va. 2010); <u>Yates v. Cunningham</u>, 70 F. Supp. 2d 47, 51-52 (D.N.H. 1999). Accordingly, Magistrate Judge Peck recommended that the Court dismiss these claims against Defendants Kunz, Hamilian, Hicks, and Tuzel.

    5.   <u>Inesti's Fourteenth Amendment Claims Against Dr. Tuzel</u>

Magistrate Judge Peck found that Inesti alleged a claim against Dr. Tuzel for deliberate indifference under the Fourteenth Amendment. Inesti claims that Dr. Tuzel injected him with psychotropic medication on multiple occasions without consent and while Inesti was physically restrained. Discovery will help to develop these facts, and Magistrate Judge Peck recommended that the Court deny Defendants' motion to dismiss this claim. <u>See</u> <u>Sudler v. City of New York</u>,

No 08 Civ. 11389, 2010 WL 726964, at *2 (S.D.N.Y. Feb. 19, 2010) (order adopting report and recommendation).

      6.  <u>Inesti's Fourteenth Amendment Claims Against Borges-Smith</u>

Inesti's claims against MPC counselor Borges-Smith arise out of her failure to inform the paramedics of Inesti's mental health status and medications when Inesti was taken by ambulance to Bellevue after striking a nurse. Inesti alleges that because of Borges-Smith's failure to inform the paramedics of Inesti's condition, Inesti did not receive medical treatment while at Bellevue. Magistrate Judge Peck found that this allegation does not satisfy the Fourteenth Amendment deliberate indifference standard and recommended that the Court dismiss all claims against Borges-Smith.

      7.  <u>Claims against City Defendants Dunbar and Pressley</u>

Magistrate Judge Peck recommended that the Court deny the City Defendants' motion to dismiss Inesti's claims against Defendants Dunbar and Pressley for lack of personal involvement. (R&R at 36-37.) Magistrate Judge Peck found that Inesti adequately alleged personal involvement by Captains Dunbar and Pressley when they denied him food, clothing, recreational out-of-cell time, showers, water, and mental health treatment, in violation of his Fourteenth Amendment rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

As official capacity claims against municipal officials are treated as claims against the municipality itself, see Brandon v. Holt, 469 U.S. 464, 471-72 (1985), a plaintiff must allege that the violation of a constitutional right resulted from a municipal custom or policy. See Costello v. City of Burlington, 632 F. 3d 41, 49 (2d Cir. 2011). Magistrate Judge Peck found that Inesti's Second Amended Complaint failed to allege that Captains Dunbar and Pressley violated Inesti's rights pursuant to any policy or custom of the City of New York. Accordingly, Magistrate Judge

Peck recommended that the Court dismiss Inesti's official capacity claims against these Defendants.

Magistrate Judge Peck found, however, that Inesti properly alleged that Captains Dunbar and Pressley violated the conditions of his pretrial detention. The Fourteenth Amendment protects a pretrial detainee against mistreatment while he is held in state custody. See Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). "[A]n injured state pretrial detainee, to establish a violation of his Fourteenth Amendment due process rights, must prove, *inter alia*, that the government-employed defendant disregarded a risk of harm to the plaintiff of which the defendant was aware." Id. at 71. Under this deliberate indifference standard, the plaintiff must satisfy a two-part test:

> First, the deprivation alleged by the prisoner must be in objective terms sufficiently serious such that the deprivation den[ied] the minimal civilized measure of life's necessities. Second, the prison officials must have acted with deliberate indifference in that they kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.

Stevens v. City of New York, No. 10 Civ. 5455, 2011 WL 3251501, at *2 (S.D.N.Y. July 22, 2011) (internal quotations and citations omitted). Under the objective prong, a prisoner must allege an extreme deprivation, ie., "that he has been denied basic human needs, such as food, clothing, shelter, medical care, and reasonable safety." Williams v. Carbello, 666 F. Supp. 2d 373, 378 (S.D.N.Y. 2009). The second, subjective prong is satisfied by allegations that a defendant "acted with a sufficiently culpable state of mind" with "deliberate indifference to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Magistrate Judge Peck found that Inesti's allegations satisfied this standard. Inesti claimed that over a ninety-day period, Captains Dunbar and Pressley denied him food and, perhaps water, showers, and medical and mental health treatment. Captain Pressley allegedly told Inesti, "You['re] never going to eat." Inesti also asserts that both Captains ordered DOC

12

staff to shut off the water supply in the SHU in order to deter prisoners from flooding the toilets or punish them for banging on their cell doors.  Construed liberally, these allegations adequately allege that Captains Dunbar and Pressley were deliberately indifferent to Inesti's basic needs.  Accordingly, Magistrate Judge Peck recommended that the Court deny City Defendants' motion to dismiss these claims against Captains Dunbar and Pressley.

   8. <u>Inesti's Claims for Injunctive and Declaratory Relief</u>

  Inesti seeks injunctive relief from the Court directing State Defendants to place him a psychiatric hospital.  In addition, Inesti seeks declaratory relief with respect to his claims against both the City and State Defendants.

  Section 1983 does not allow a prisoner to seek immediate release or speedier release from confinement; rather, a prisoner must seek such federal relief through a writ of habeas corpus.  <u>See</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973); <u>Jenkins v. Haubert</u>, 179 F.3d 19, 22-23 (2d Cir. 1999).  Accordingly, Magistrate Judge Peck found that to the extent that Inesti seeks to have his conviction overturned in an effort to be placed in a mental health facility, his claims for injunctive relief should be dismissed.

  Magistrate Judge Peck also found that Inesti's claims for injunctive and declaratory relief should be dismissed because he lacks standing to raise such claims.  "To establish standing in federal court, any party bringing a lawsuit must allege an actual case or controversy."  <u>Deshawn E. by Charlotte E. v. Safir</u>, 156 F.3d 340, 344 (2d Cir. 1998).  "Specifically, a plaintiff must demonstrate that (1) he or she suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury."  <u>Id.</u>  "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."  <u>Id.</u>  Inesti filed his

Complaint while in State prison; he is no longer in the custody of any of the named State or City Defendants. Nor has Inesti alleged any facts showing that he is likely to return to GRVC, MPC, or Kirby in the future. See Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.") Accordingly, Magistrate Judge Peck found Inesti's claims for injunctive and declaratory relief should be dismissed for lack of standing.

## DISCUSSION

### A. Standard of Review

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the magistrate's recommendations, the court is required to review the contested portions *de novo*. Pizzaro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). The court, however, "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). Moreover, "[w]hen a party makes only conclusory or general objections . . . the [c]ourt will review the Report strictly for clear error . . . . Objections to a Report must be specific and clearly aimed at particular findings in the magistrate judge's proposal." Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (citations omitted).

### B. The City Defendants' Objections

On June 29, 2012, City Defendants Dunbar and Pressley filed objections to the R&R on the grounds that 1) because Inesti's insanity was not continuous, his claims arising from events before January 2008 are time barred, and 2) Inesti's claims arising from events after April 7, 2008 should be dismissed for failure to state a claim.

City Defendants contend that Inesti's "bare and conclusory" assertions that he suffered from insanity are insufficient to establish a continuous period of insanity. They argue that Magistrate Judge Peck failed to cite or apply law holding that lucid intervals preclude tolling under CPLR § 208. See Carter v. Doe, No. 05 Civ. 8432, 2006 WL 2109461, at *2 (S.D.N.Y. July 26, 2006) ("[I]f the plaintiff had a lucid interval of significant duration, preceded and followed by a period of insanity, the toll is lost and is not resurrected when a plaintiff relapses into insanity."). City Defendants claim that in his reply to State Defendants' motion to dismiss, Inesti admitted that he was lucid enough to bring a claim, thereby triggering the statute of limitations.

Magistrate Judge Peck appropriately found that a factual question exists regarding Inesti's insanity. In addition to Inesti's own allegations, Magistrate Judge Peck noted that in October 2008, Dr. Erica Weissman diagnosed Inesti as having a "Mood Disorder Not Otherwise Specified (NOS) and a "Personality Disorder NOS with Borderline and Antisocial Features." (R&R at 19.) Dr. Weissman opined that Inesti "is, in fact, currently incapacitated . . . [and] would benefit from further inpatient care, including . . . psychotropic medications and cognitive-behavioral psychotherapy." (Id.)

On November 21, 2008, based on two court-ordered psychiatric examinations, the trial court found Inesti unfit for trial and ordered him committed for treatment at an appropriate facility. (Docket No. 44, Buskin Aff., Ex. A.) The record shows that Inesti was diagnosed with schizoaffective one disorder on multiple occasions. Although Inesti asserts that he "could have commenced a timely lawsuit in January 2008," he also states that he returned to MPC "to be treated for a condition for which he had originally been court ordered to cure and stabilized [sic] and having never been cured was still the source of complaints in these circumstances." (Docket

No. 52, Pl. Reply Mem. ¶ 19.)  Thus, at this stage of the litigation, Magistrate Judge Peck properly found that a question of fact exists as to Inesti's insanity.

City Defendants also object to the R&R on the grounds that Inesti's claims arising from his second confinement at GRVC in August 2008 do not satisfy the Iqbal pleading standard.  In his Second Amended Complaint, Inesti claims that while he was housed in the SHU from August 8 to November 21, 2008, he "was denied food, clothing, recreational out of cell time, showers, and mental health treatment by Defendants Captain Dunbar and Pressley."  (Second Am. Compl. ¶¶ 104-105.)  Contrary to City Defendants' argument, Inesti does not assert that he survived 106 days without ever leaving his cell or receiving sustenance, as City Defendants claim.  Rather, he argues that while Captains Dunbar and Pressley were on duty, he was deprived of basic life necessities.  Accordingly, Magistrate Judge Peck properly found that Inesti satisfied Iqbal's plausibility standard, and City Defendants' objections are without merit.

## C. The State's Objections

On July 20, 2012, State Defendants Hogan and Rabinowitz filed objections to the R&R.  State Defendants maintain that Inesti's allegations do not support Fourteenth Amendment claims of deliberate indifference on the grounds that they were not personally involved in depriving Inesti's rights.  They further argue that the R&R does not specify how Inesti met his burden to satisfy the Colon or Iqbal factors.

Contrary to the State Defendants' objection, Magistrate Judge Peck noted several bases as to how the Colon factors are established.  Inesti alleges that he made "numerous unresolved complaints to Defendants Steve Rabinowitz and Michael Hogan" concerning Inesti's medical treatment.  (Second Am. Compl. ¶ 135.)  Inesti further contends that Hogan and Rabinowitz failed to investigate his concerns, and that Rabinowitz "did not want to treat" him.  (R&R at 25.)

Furthermore, Inesti asserts that Hogan and Rabinowitz and transferred him to Rikers Island "with no medication or mental health treatment." (R&R at 24-25.) These allegations support a deliberate indifference claim under the Fourteenth Amendment. See e.g., Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996) ("[T]he official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need."); Fountain, 2012 WL 1372148, at *3 (holding section 1983 plaintiff sufficiently pleaded personal involvement under second or fifth Colon factors where complaint alleged that defendant commissioner of corrections failed to respond to plaintiff's letters requesting an investigation and disciplinary action be taken against corrections officers).

  To the extent the State Defendants argue that Inesti's claims fail to survive Iqbal's limits to the Colon standard, until the Second Circuit resolves this question, the Court agrees with the holdings that "the five Colon categories for personal liability of supervisors may still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated." Fountain, 2012 WL 1372148, at *4 (quoting D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010)).

  State Defendants further argue that Inesti's First Amendment retaliation claim against Rabinowitz should be dismissed, as Inesti failed to allege a causal connection between any protected speech and his transfer to Rikers Island in January 2009. Defendants argue that since Inesti was found competent to stand trial and ordered transferred back to DOC custody pursuant to New York Criminal Procedure Law section 730 and a court order, the transfer to Rikers Island would have occurred irrespective of any retaliatory intent.

      While these State Defendants' arguments may ultimately prove meritorious on summary judgment, they are premature at the pleading stage.  In deciding a Rule 12(b)(6) motion to dismiss, the Court takes Inesti's allegations as true and does not consider Defendants' affidavits.  <u>Harris</u>, 572 F.3d at 71; <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007).  Inesti alleges in his Second Amended Complaint that he "made numerous complaints concerning the cruel and miliscius [sic] treatment to his person and other patients by T.A. employees, and nurses to Defendant Steve Rabinowitz."  (Second Am. Compl. ¶ 44; <u>see also</u> <u>id.</u> ¶ 55.)  He further alleges that he was labeled "a nuisance and a trouble maker," and that Rabinowitz "ordered [Inesti] to simply be sent back to Rikers Island denying Plaintiff mental health treatment."  (<u>Id.</u> ¶¶ 116-118, 121.)  Magistrate Judge Peck properly found that these allegations state a plausible First Amendment claim for retaliation.  State Defendants' objections cannot be sustained.

## CONCLUSION

    For the foregoing reasons, the Court accepts and adopts the Report and Recommendation in its entirety.  City Defendants' motion to dismiss is granted with respect to Inesti's official capacity claims against Captains Dunbar and Pressley.  City Defendants' motion is denied in all other respects.  State Defendants' motion to dismiss is granted in part and denied in part.  Inesti's claims for damages arising out of court-ordered examinations and reports against State Defendants Kunz, Hamilian, Hicks, and Tuzel are dismissed on immunity grounds.  Inesti's claim against Defendant Borges-Smith is dismissed for failure to state a claim.  Lastly, Inesti's claims for injunctive and declaratory relief are dismissed for lack of standing.

State Defendant's motion is denied in all other respects. The May 17, 2012 Order of Reference remains in effect in accordance with the July 9, 2012 Rule 16 IPTC Scheduling Order.

Dated: New York, New York
      September 4, 2012

SO ORDERED

*/s/ Paul A. Crotty*
PAUL A. CROTTY
United States District Judge

Copies mailed to:

Mark Inesti
10-A-1169
Five Points Correctional Facility
6600 State Route 96
Caller Box 119
Romulus, NY 14541

19